HOPKINS *v.* CROSSLEY.[1]

TRUSTS—PERSONAL PROPERTY—CHARITABLE USES.

> An incorporated volunteer fire department, preparatory to a dissolution, and after disposing of a portion of its property, converted the balance into money, and placed it in the hands of trustees, the income therefrom to be applied by them to the relief of poor and needy members of the corporation and their families, to the relief of any poor, needy, or disabled members of the present or future fire department, and to the relief of any other needy and worthy persons who might be designated from time to time by the trustees. *Held,* that the doctrine of charitable uses does not exist in this State, and the trust should be held void.

Appeal from Wayne; Hosmer, J. Submitted October 17, 1902. (Docket No. 80.) Decided April 7, 1903.

Bill by Robert Hopkins and others against Luke Crossley and others to set aside a trust. From a decree dismissing the bill, complainants appeal. Reversed.

*John J. Speed* and *Robert T. Speed,* for complainants.

*Fred A. Baker,* for defendants.

HOOKER, C. J. The members of the old volunteer fire department of Detroit were incorporated in 1840 by special act of the legislature, and given the right of perpetual succession. Laws 1840, Act No. 14. Section 6 of the act provided that "the interest arising from the funds of the said corporation, except sufficient to defray incidental expenses, shall be appropriated to the relief of such indigent and disabled firemen and their families who may be interested in the fund, and who may, in the opinion of the majority of the trustees, be worthy of assistance." This section was amended in 1869 to read as follows, viz.:

---

[1] Rehearing denied September 22, 1903.

" That the funds of the said corporation, and the interest thereon, shall be appropriated and used in carrying out the objects and purposes of said corporation, defraying its incidental expenses, providing for the relief of indigent and disabled members of the corporation, their widows and orphans, as well as for the maintenance of an institution or institutions for moral and intellectual improvement, and the relief and instruction of such homeless and destitute persons of the city of Detroit as they may select, and for no other purpose whatever." 3 Laws 1869, Act No. 440.

The volunteer fire department was abolished by the organization of a paid department in 1867. 2 Laws 1867, Act No. 453, § 2. The corporate organization of the old department was maintained until 1886. Shortly before that time a meeting was held, at which 80 of a total of 116 members were present, and, after hearing the report of a committee appointed by the meeting, said report was adopted by a unanimous vote of the 80 present. The substance of the report was as follows: It recommended:

1. That the property be converted into money, with the exception of certain paintings, which should be turned over to the Art Museum, in trust, and, if that should cease to exist, then to be delivered to the Public Library.

2. That $58,500, or so much of said sum as should be necessary for the purpose, should be used to pay each one of the existing members of the corporation the sum of $500.

3. That $15,000 should be used in purchasing a bed in perpetuity in each of several hospitals of the city, naming them, to be devoted to specified uses.

4. That the balance of the fund should be placed in the hands of three trustees, to be named by the corporate board, as a *trust of personal property only,* and that the income to be derived from such fund should be applied by them "to the relief of poor and needy or disabled members of this corporation and their families, so long as any of them live; that, *secondly,* said income shall be applied to the relief of any poor, needy, or disabled members of the present active, or any future, fire department of the city of Detroit; that, *thirdly,* said income shall be applied to the relief of any other needy and worthy persons who may be designated from time to time by the trustees hereinafter

mentioned; that said trustees may also use, in their discretion, a portion of the income, from time to time, in keeping the lots and monuments erected in the cemeteries of Detroit in honor of the firemen of said city in repair; that whenever the trustees, in purchasing a bond or security, shall pay a premium therefor, they shall retain out of the interest such sums annually as will restore to the fund at the maturity of the bonds or security exactly what was taken therefrom at the time of the purchase; and that said trustees are also charged with the duty of looking after the beds in said hospitals, to the end that they be devoted to the uses and purposes for which they were purchased." Provision was made for the appointment of trustees to fill such vacancies as should occur.

5. That, when the foregoing plan should be carried out, proceedings be taken for the voluntary dissolution of the corporation.

Accordingly the proper officers executed an indenture to three persons, named as trustees, reciting the proceedings mentioned above, and the proceedings of the corporation and board thereafter taken to carry out said report so adopted, and that the property had been converted into money, and $500 paid to each member, the delivery of the paintings as provided, the purchase of the beds as directed, the selection of trustees and their acceptance, and thereby conveyed the remaining property, amounting to $20,000, to said trustees. This writing was executed in 1887, and its provisions have been carried out since. The corporation was duly dissolved thereafter. The bill in this cause was filed by 24 of 48 survivors of the members of the defunct corporation for the purpose of having the trust declared void. They pray that the trustees be required to distribute the funds, principal and interest, among the surviving members of the corporation. The trustees answered, and a hearing upon the merits was followed by a dismissal of the bill, with costs. The complainants have appealed.

It seems to be conceded that this trust can be sustained only upon the theory that it is a conveyance to charitable uses. Complainants contend that the doctrine of charit-

able uses does not exist in this State, while defendants insist that it does so far as to cover conveyances of personal property for charitable uses, though they admit that it does not as to real estate.  It is a significant fact that no case has been called to our attention in which the doctrine has been enforced, either as to real or personal property.   The case of *Methodist Episcopal Church* v. *Clark*, 41 Mich. 741 (3 N. W. 207), discussed the question, and it was then pointedly said by Mr. Justice COOLEY that the statute of Elizabeth was repealed in 1810, and that "there is no evidence that any pre-existing law on that subject has ever been recognized in this State." Counsel for the defendants says that this language was not necessary to a decision of the case, for the reason that the statute against perpetuities was sufficient to require the disposition made of that case, and that what was said about charities was *dictum.*   Assuming this as a premise, he proceeds to argue that this trust can be maintained because of the absence of a statute restraining alienation of personal property, in which respect Michigan statutes differ from those of New York, from which fact he urges a distinction between the law declared in New York and the rule which he invokes to govern this case.

If it can be said that the only obstacle in the way of upholding the trust is the statute against perpetuities, his contention might be sustained.   Again, the statute of uses and trusts (chapter 238, 3 Comp. Laws 1897) does not affect the question, for it affects real property only. *Ledyard's Appeal,* 51 Mich. 623 (17 N. W. 208).   We find it necessary, therefore, to ascertain whether the case of *Methodist Episcopal Church* v. *Clark, supra,* is controlling.   In that case a landowner conveyed to trustees certain lands, "in trust that they shall erect and build * * * a church for the use of the members of the Methodist Episcopal Church, * * * and in further trust and confidence that they shall at all times forever hereafter permit such ministers * * * to preach therein," etc.   The court first discussed the case upon the assump-

tion that the trust was for the exclusive benefit of the local society, and upon that theory held that the trust was void, as conflicting with the principle of the general statute against perpetuities. 2 Comp. Laws 1871, § 4082. If a private trust, as assumed, this would doubtless be true. We now come to what is said to be a *dictum*. The court seems to have considered it necessary to go further. It did not leave the decision to rest upon the assumption that this was a private charity, for, as was said, the terms of the trust were somewhat ambiguous, and the deed was open to an interpretation which would preclude any exclusive appropriation by the local society. While the court did not decide that this was a public charity, it may be thought to have intimated that it might be, and called attention to a case where a similar trust was discussed. See *Methodist Society* v. *Bennett*, 39 Conn. 293. If, as defendants' counsel has chosen to admit, the statute against perpetuities in relation to real property is applicable to lands conveyed to charitable uses, as it was held to be to lands conveyed to a private trust or use, this might easily have been said, and more would have been unnecessary; but the court did go further, as already said, and, if it was necessary to do so, to dispose of this feature of the case before it, what *was* said was more than a *dictum*. Evidently the court thought it necessary, and it can hardly be said to have supposed that what it said was *obiter*.

We will, however, examine the question further. Counsel's seeming concession that the statute against perpetuities in land applies to land conveyed to charitable uses may not correctly state the law. On the contrary, it has been held in many cases, if it is not the uniform doctrine, that "the rule against perpetuities does not apply to a gift to a charity." See a discussion of this subject in Perry, Trusts, § 384, and section 736 *et seq.*, and notes, where the distinction between charities and trusts (proper) is drawn. See, also, the text and authorities cited in 5 Am. & Eng. Enc. Law (2d Ed.), at page 902. It is sig-

nificantly said in a note to the last citation that while provisions against perpetuities are found in several States, among which is Michigan, the validity of charitable trusts has not been attacked on that ground.    This is true of the opinion in *Methodist Episcopal Church* v. *Clark.*   We see from the foregoing that the court might readily have believed, as we think it did, that its decision could not be left to rest on the statute prohibiting perpetuities, if it was to call the trust a charitable one.   It understood that the statute was no answer to such a claim, and it went on to say:

"If the law of charitable uses were in force in this State, the trust might be upheld under its rules.    But that law is generally referred to as the 'Statute of Elizabeth,' commonly called the 'Statute of Charitable Uses,' which, with other English statutes, was repealed in Michigan in 1810. 1 Terr. Laws, 900.    There is no evidence that any preexisting law on that subject has ever been recognized in this State."

See, also, *Hathaway* v. *Village of New Baltimore,* 48 Mich. 254 (12 N. W. 186); *Harrington* v. *Pier,* 105 Wis. 485 (82 N. W. 345, 50 L. R. A. 307, 76 Am. St. Rep. 924); *Bascom* v. *Albertson,* 34 N. Y. 584; *Holmes* v. *Mead,* 52 N. Y. 332; *Ruth* v. *Oberbrunner,* 40 Wis. 238.

We are convinced that the rule laid down is not a *dictum,* and that the question was settled in that case. It is urged that this holding was wrong, and that the court of chancery, having the powers of the English court of chancery, has a jurisdiction over charities independent of the statute of charitable uses,—one whose origin antedated such statute.    It must be admitted that many authorities sustain this contention, but to adopt it we must overrule authorities in this State of long standing, which have been followed by the profession and the courts.    The conflict among the decisions of other States indicates that the doctrine contended for may be of questionable policy, and, if it is not, a remedy can readily be applied.    We have felt reluctant to hold invalid this charitable trust,

which seems a meritorious one, but we see no escape from that responsibility.

The first, second, and third prayers of the bill will be granted, and it is further decreed that the trustees distribute, under the direction of the circuit court, among the persons who shall be shown to be entitled thereto, the fund in their possession.   No costs will be allowed.

MOORE, GRANT, and MONTGOMERY, JJ., concurred.