LOOMIS *v.* MACK.

CONSTITUTIONAL LAW—TITLE OF ACT—STATUTES—TRUSTS—WILLS
—CHARITABLE TRUSTS—OBJECT OF STATUTE.

Act No. 122, Pub. Acts 1907 (4 How. Stat. [2d Ed.]
§§ 10700-1), having as title the following, "An act relative
to gifts for religious, educational, charitable, and benevo-
lent purposes," is constitutional and valid: the title suffi-
ciently expresses the purpose of the statute within Art. 5,
§ 21, of the Constitution.

STONE, OSTRANDER, BIRD, and STEERE, JJ., dissenting.

Appeal from Oakland; Murphy, J., presiding. Sub-
mitted April 27, 1914. (Docket No. 4.) Decided
January 4, 1915. Rehearing denied April 28, 1915.

Bill by William H. Loomis against Eugene Mack,
trustee, and others, for the construction of a will.
From a decree sustaining the trust created by the in-
strument, complainant and certain defendants appeal.
Affirmed.

*Glenn C. Gillespie* and *Frank L. Doty* (*Robert M.
Chamberlain, Arthur Webster,* and *Chamberlain, May,
Denby & Webster,* of counsel), for appellant Loomis.

*Pelton & McGee* (*B. F. Reed* and *George B. Andrew,*
of counsel), for appellant Rowland.

*Patterson & Patterson,* for appellee Mack.

*Charles L. Dibble, amicus curiæ.*

OSTRANDER, J. The bill filed in this cause asks for
the construction of the will of Leonard Rowland, who
died in March, 1909, and prays that the fourth clause
thereof may be decreed to be invalid. The fourth
clause creates what is called a charitable trust for the
benefit of dependent children in Oakland county be-
tween the ages of 12 and 14 years. The estate con-

sists of both real and personal property. It is conceded that the provision must fail unless it is saved by, and the trust created can be administered under, Act No. 122, Public Acts of 1907 (4 How. Stat. [2d Ed.] §§ 10700, 10701), entitled "An act relative to gifts for religious, educational, charitable and benevolent purposes," which declares:

"SECTION 1. No gift, grant, bequest or devise to religious, educational, charitable or benevolent uses which shall in other respects be valid under the laws of this State, shall be invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same, nor by reason of the same contravening any statute or rule against perpetuities. If in the instrument creating such a gift, grant, bequest or devise, there is a trustee named to execute the same, the legal title to the lands or property given, granted, devised or bequeathed for such purposes, shall vest in such trustee. If no trustee shall be named in said instrument, or if a vacancy occurs in the trusteeship, then the trust shall vest in the court of chancery for the proper county, and shall be executed by some trustee appointed for that purpose by or under the direction of the court; and said court may make such orders or decrees as may be necessary to vest the title to said lands or property in the trustee so appointed.

"SEC. 2. The court of chancery for the proper county shall have jurisdiction and control over the gifts, grants, bequests and devises in all cases provided for by section one of this act. The prosecuting attorney of the county in which the court of chancery shall have jurisdiction and control shall represent the beneficiaries in all cases where they are uncertain or indefinite, and it shall be his duty to enforce such trusts by proper proceedings in the court, but he shall not be required to perform any duties in connection with such trusts in any court outside of this State."

The act was amended by Act No. 125 of the Public Acts of 1911, but not so as to affect the questions presented here.

The learned trial judge filed carefully considered opinions, sustaining the validity of the legislation and the validity of the will. The bill was dismissed.

It is said in this court, as it was in the court below:

(1) The object of the act is not expressed in the title; (2) the act is broader than its title, and it is therefore unconstitutional.

It is also contended that, if the statute is valid, the particular trust is invalid, not because the beneficiaries are indefinite, but because the purpose of the trust is indefinite. The trust is not fully expressed and clearly defined upon the face of the instrument creating it.

In *Moore* v. *O'Leary,* 180 Mich. 261 (146 N. W. 661), we had occasion to examine this statute and to determine whether, in view of its provisions, a certain disposition of property by last will could be sustained. The constitutionality of the law was not questioned or considered, and the act itself was not construed.

The statute is like one adopted in the State of New York in 1893, which, when adopted here, had been construed by the court of last resort of that State. The New York chancery courts, in an early day, asserted and exercised a somewhat broad power to administer charitable trusts. And in *Allen* v. *Stevens,* 161 N. Y. 122 (55 N. E. 568), in sustaining a bequest, after referring to the earlier doctrine of the courts, it was said of the New York statute of 1893 (Laws 1893, chap. 701):

"Reading the statute in the light of the events to which reference has been made, it seems to me very clear that the legislature intended to restore the law of charitable trusts as declared in the *Williams Case;* that having discovered that legislative enactment had operated to take away the power of the courts of equity to administer trusts that were indefinite as to beneficiaries, and had declared a permanent charity void unless the devise in trust was to a corporation

already formed or to one to be created, it sought to restore that which had been taken away through another enactment. This is markedly indicated, not only by the absence of details in the statute, which is broadly entitled 'An act to regulate gifts for charitable purposes,' but also in the brevity of the statute, which confers all power over such trusts and trustees on the Supreme Court and directs the attorney general to represent the beneficiaries in cases within the purview of the statute, as was the practice in England. Practical effect can be given to the provision that no devise or bequest shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as beneficiaries only by treating it as a part of a general scheme to restore to the courts of equity the power formerly exercised by chancery in the regulation of gifts for charitable purposes, for, in order to ascertain the class of persons who were entitled to the benefits of the trust, the rule formerly in force must necessarily be invoked by which the court ascertained, as nearly as possible, the intention of the testator, by decree adjudged, who were intended to be the beneficiaries of the trust, and directed its administration accordingly."

We have in this State no body of rules, no affirmation or exercise of power in the equity courts to administer charitable trusts. On the contrary, by a policy more than 100 years old, the doctrine of charitable trusts has been refused in Michigan. *Methodist Episcopal Church* v. *Clark*, 41 Mich. 730 (3 N. W. 207); *Hopkins* v. *Crossley*, 132 Mich. 612 (96 N. W. 499). See, also, *Moore* v. *O'Leary, supra.* In Michigan, trusts for charitable uses have never been distinguished from others, and their validity has always depended upon the rules affecting other trusts. Whether the trust fund was real or personal estate, the object public or private benefaction, the rule here, evidenced by legislation long in force, is the rule of the common law:

"If there be a clear trust, but for uncertain objects, the property that is the subject of the trust is undisposed of; and the benefit of such trust must result to those to whom the law gives the ownership in default of disposition by the former owner." *Morice* v. *Bishop of Durham,* 9 Vesey, 399.

So, also, if the beneficiaries of the trust be uncertain. *Stoepel* v. *Satterthwaite,* 162 Mich. 457 (127 N. W. 673). So by our law it is provided that:

"The absolute power of alienation shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance of two lives in being at the creation of the estate, except in the single case mentioned in the next section." 3 Comp. Laws, § 8797.

Repeatedly the courts have been obliged to enforce this statute to prevent the accumulation of landed estates to be held in perpetuity or for a long period of time. If, then, the object of the statute now before us is, as it appears to be, to overturn a long-settled State policy in favor of gifts, grants, bequests, and devises to religious, educational, charitable, and benevolent uses, and to permit courts of chancery to administer, in perpetuity, landed and other estates, the advertisement of such an object ought to be clear. The Constitution, art. 5, § 21, provides that:

"No law shall embrace more than one object, which shall be expressed in its title."

This provision of the fundamental law is binding upon the legislature as well when it borrows or adopts a law from another jurisdiction as when the law originates at home.

"The Constitution has made the title the index to the legislative intent as to what shall have operation." *Callaghan* v. *Chipman,* 59 Mich. 614 (26 N. W. 808).

"One of the purposes * * * of the Constitution is to prevent 'the insertion of clauses in the bill

of which the title gives no intimation,' or, as has been said, 'for the purpose of preventing the legislature, as well as the people, from being misled as to its contents.'" *Davies* v. *Board of Supervisors,* 89 Mich. 302 (50 N. W. 862).

"This purpose of the constitutional direction, which has been disregarded in this act, is that the intent of the bill—its object—shall be clearly shown by its title, for the benefit, not only of the members of the legislature who are to vote upon it, but also for the benefit of the people of the State outside of the legislature, who are interested, and have a right to be, in all legislation." *Brooks* v. *Hydorn,* 76 Mich. 278 (42 N. W. 1123).

"The purpose of this constitutional provision is that legislators, and as well parties interested, may understand from the title that only provisions germane to the object therein expressed will be enacted." *Blades* v. *Water Com'rs of Detroit,* 122 Mich. 378 (81 N. W. 276).

If the title to this act expresses its object, it equally as well expresses the object of any act which could be passed affecting gifts, grants, bequests, and devises for religious, educational, charitable, and benevolent purposes, and it equally as well expresses the object of any act enlarging or limiting the powers to be exercised by courts of chancery. This is so even if we consider the word "gifts" in the title as equivalent to and meaning the same as "grants, bequests, and devises." The trouble is that the title to the act expresses no object and would express none if we could refer the words "gifts for religious, educational, charitable, and benevolent purposes" to a body of rules or a doctrine, the nature and extent of which was well known and made certain by association, practice, or judicial decision. In whatever manner or spirit the title is read, the inquiry must still be: What is the object of the law? And that can be discovered only by reading the law. The title is misleading. In my

opinion, there is present, not a mere technical evasion or disregard of the Constitution, but the precise evil at which the Constitution is aimed. An act of the greatest importance is passed with a title which not only fails to express its object but, in so far as it is suggestive of an object, is misleading. In such a case, the duty of the court, however unpleasant its performance, is to declare the act invalid.

I doubt the value of any attempt to reply to the opinion of Mr. Justice BROOKE upon this point. Industry might be so extended as to bring together even a larger variety of titles to legislative acts than he has done. Whether the ruling I have indicated would or would not make invalid "a mass of legislation of the greatest importance" is, I submit, not an argument. The question is whether the law before us "has but one general object which is fairly indicated by its title." *People* v. *Mahaney*, 13 Mich. 481, 495. The question must be answered, not by a reference to any mass of legislation of great or of little importance, but by an intelligent examination of the act itself, discovery of its general object, and finding the object fairly indicated in the title, or otherwise. That the effect of my conclusion is to overrule two of our own decisions is a statement which should be noticed. It is not very material, but the title to the original act, considered in *Soukup* v. *Van Dyke*, 109 Mich. 679 (67 N. W. 911), is not correctly stated in the opinion of Mr. Justice BROOKE. The title is:

"An act relative to justices' courts in the city of Grand Rapids, to reduce the number thereof, and to fix the compensation of such justices, and provide a clerk and offices therefor."

It is clear that almost any provision relating to justices' courts in Grand Rapids might be looked for in such an act. The act contained also provisions

regulating fees to be paid by suitors and to transfer
of causes for trial from one justice to another. By
an amendatory act, entitled "An act to amend an act
entitled 'An act,'" repeating the title of the original
act, justices of the peace of the city of Grand Rapids
were given exclusive jurisdiction of all actions within
the limits of a justice's jurisdiction where both parties
were residents of the city. The question was whether
this object was sufficiently indicated in the title. It
was held that the general words, "An act relative to
justices' courts in the city of Grand Rapids," indicat-
ed the general purpose of the legislation, which was
not restricted by a reference in the title to certain
special features of the act. The general rule applied
was, "The title is sufficient if it fairly and reasonably
announces the object, and that is a single one." *People
v. Kelly*, 99 Mich. 82 (57 N. W. 1090) ; *Canal Street
Gravel Road Co. v. Paas*, 95 Mich. 379 (54 N. W. 907),
and *Van Husan v. Heames*, 96 Mich. 507 (56 N. W.
22), are cited. In this connection, *People v. Snyder*,
108 Mich. 48 (65 N. W. 562), and *Cote v. Village of
Highland Park*, 173 Mich. 201 (139 N. W. 69), may
be cited. I think the distinction between the case at
bar and those cited by Justice BROOKE is plain. In
*People v. Kelly*, the title of the act was "An act rela-
tive to disorderly persons and to repeal," etc. It is
said in the opinion:

"The precise contention is that the title gives no
information as to what acts constitute a disorderly
person, and that the third offense, of which the de-
fendant was found guilty, is not expressed therein.
The title to this act is the same as the titles to other
acts for the punishment of disorderly persons, which
have been, from time to time, enacted by the legisla-
ture, and the sections of those acts defining who are
disorderly persons have been substantially the same.
The term 'disorderly persons' is comprehensive, and
properly includes all those who are designated in the

body of the act. It is within the purview of the title to include different degrees of punishment for first, second, and subsequent convictions. The crime does not consist in the fact of two or more convictions, but in the fact that the respondent has been convicted as a disorderly person for the second or more times. Upon such subsequent trial, he must be found guilty of being a disorderly person; and, in order to impose the heavier punishment, former convictions must be proven. This objection to the law is not well founded."

This court has been careful not to hamper legislation by a too strict application of the constitutional provision in question. Each case in which it has been applied must be consulted in order to learn the real ground of decision. I have called attention to the fact that in the case now presented the title is not aided by a reference therein to any subject defined by former legislation or to any body of rules or to a doctrine made certain by association, practice, or judicial decision.

But I do not consider that, because all donations to the uses mentioned in the act are commonly known as gifts, the word "gifts" in the title expresses the same meaning as the words "grants, bequests, and devises" in the body of the act, nor connotes or suggests the larger purpose and object indicated in the body of the act. It will be presumed to have the same meaning in the title that it has in the body of the act, where, plainly, it is used as having a different meaning than the words "grants, bequests, and devises."

The decree should be reversed, and a decree entered in this court generally agreeably with the prayer of the bill; but, unless counsel can agree upon its terms, the extent to which the trustee ought equitably to account must be left a matter for further consideration.

STONE, BIRD, and STEERE, JJ., concurred with OSTRANDER, J.

BROOKE, C. J. My Brother OSTRANDER holds the act in question invalid because of the alleged insufficiency of its title. The title reads: "An act relative to gifts for religious, educational, charitable and benevolent purposes." This court has three times passed upon the precise question raised.

In *People* v. *Kelly*, 99 Mich. 82 (57 N. W. 1090), the court had under consideration an act entitled "An act relative to disorderly persons." It was said:

"The precise contention is that the title gives no information as to what acts constitute a disorderly person, and that the third offense of which the defendant was found guilty is not expressed therein. * * * This objection to the law is not well founded."

In *Soukup* v. *Van Dyke*, 109 Mich. 679 (67 N. W. 911), the title under consideration was: "An act relative to justices' courts in the city of Grand Rapids." The court said:

"We think the general words 'An act relative to justices' courts in the city of Grand Rapids' are used to indicate the general purpose of the legislation. * * *

"The provision requiring the object to be expressed in its title has not received a construction which renders it necessary * * * that the title be as full as the act itself."

Again in the case of *People* v. *Worden Grocer Co.*, 118 Mich. 604 (77 N. W. 315), this court, in considering an act entitled "An act in relation to the manufacture and sale of vinegar," said:

"It is contended that the title to the act does not express any object; that the act was intended to prevent deception in the sale of vinegar, or to prevent adulteration of vinegar, but that no such object is expressed in the title. * * * We think this contention sufficiently answered by what was said by this court in *Soukup* v. *Van Dyke, supra.*"

Much of the most important legislation upon our

684 183 Michigan Reports. [Jan.

statute books has been enacted under titles similar to the one in question. Some instances follow:

"An act relative to levies and sales in execution, in certain cases." Act No. 274, Laws 1865.

"An act relating to negotiable instruments." Act No. 265, Pub. Acts 1905.

"An act in relation to the public health in this State." Act No. 293, Pub. Acts 1909.

"An act in relation to the sale of corn syrup." Act No. 123, Pub. Acts 1903.

"An act relative to the unauthorized removal of timber or other property from State tax lands." Act No. 145, Pub. Acts 1903.

"An act in relation to the use of preservatives in food products." Act No. 7, Pub. Acts 1905.

"An act relative to the cost of bonds to be furnished by State officers." Act No. 311, Pub. Acts 1905.

"An act relative to agreements, contracts and combinations in restraint of trade or commerce." Act No. 329, Pub. Acts 1905.

"An act in relation to acquiring title to real estate by adverse possession." Act No. 46, Pub. Acts 1907.

"An act relative to the maintenance and construction of hospitals and sanitoria within the counties of this State and to provide a tax to raise moneys therefor." Act No. 139, Pub. Acts 1909.

"An act relative to wills executed without this State." Act No. 45, Pub. Acts 1911.

"An act relative to proceedings against and the liquidation of delinquent insurance corporations." Act No. 216, Pub. Acts 1911.

"An act relating to the conduct of hotels, inns and public lodging houses." Act No. 188, Pub. Acts 1913.

In addition to the foregoing there are others. This list is sufficient, however, to indicate the breadth and importance of the legislation enacted under titles subject to the exact infirmity which my Brother holds fatal to the act in question. Many of these acts are penal in character and directly affect the liberty of the individual. Others deal with the public health, fix property rights, and define and provide penalties for

illegal methods of doing business. Many of these acts
have been before this court for construction; no attack
having been made upon their several titles. To agree
with my Brother's conclusion would be to overrule the
three cases above cited, to adopt a new and much
stricter rule of construction, and (by inference) to
make invalid a mass of legislation of the greatest im-
portance. It is true that the act in question does
change an old and well-settled policy of this State.
That fact, however, does not militate against its valid-
ity. Legislative changes are constantly being made
to meet varying conditions, and it is the duty of the
court to give effect to legislation, where the legislative
intent is clear and no constitutional provision offended.

It should be noted that, under constitutional provi-
sions practically identical with our own, the States
of Pennsylvania and Kentucky have had for many
years acts similar in character to our own under titles
subject to the same alleged infirmity. The fact that
the title may be said to be broader than the enactment
thereunder does not affect its validity. Under our own
decisions, I am satisfied that the title to the act in ques-
tion is sufficient.

It is said that the word "gifts" in the title is insuffi-
cient to cover the language "gift, grant, bequest or
devise" used in the body of the act, and that there-
fore the enactment is broader than its title. 1 Comp.
Laws, § 50, subsec. 1, relative to the construction of
statutes, provides:

"All words and phrases shall be construed and un-
derstood according to the common and approved usage
of the language; but technical words and phrases, and
such as may have acquired a peculiar and appropriate
meaning in the law, shall be construed and under-
stood according to such peculiar and appropriate
meaning."

The word "gift" is about as common and ordinary

as any in the English language. It is of everyday use, and has acquired a very well-settled, common, and approved definition. That universally accepted and popular definition is the transfer without consideration of something of value, whether between living persons or by will. The fact that a sum of money is bequeathed or a piece of real estate devised by law does not affect the quality of the act. It is still a gift, in the popular understanding of that term, and, indeed, would be so understood by the legally trained mind as well as by the lay mind. The donee of a gift *inter vivos*, the legatee of a bequest, or the devisee of lands all receive something of value without consideration. The quality of the transaction is the same in each instance, though the method of its performance is different. To hold that the word "gift" was insufficient to cover the terms used in the enacting part of the statute would, in my opinion, be inexcusable over-refinement.

At the last session of the legislature, an act (Act No. 380, Pub. Acts 1913) was passed entitled:

"An act to regulate gifts of real and personal property to cities, villages and other municipal corporations, and to validate all such gifts heretofore made."

Section 1 provides:

"Any city, village, township or other municipal corporation in the State of Michigan may receive, own and enjoy any gift of real or personal property, made by grant, devise, bequest or in any other manner, for public parks,   *   *   *   whether made directly or in trust.   *   *   *"

This act has never been construed by this court, and it is significant only as indicating the legislative understanding of the definition of the word "gift," used in the earlier act. It is unnecessary to hold that the word "gift" in the title be restricted to the meaning it is said to have in the body of the act.

In Black on Interpretation of Laws, § 82, it is said:

"Where the same language is used repeatedly in the statute, in the same connection, it is presumed to bear the same meaning throughout the act; but this presumption will be disregarded where it is necessary to assign different meanings to the same term in order to make the statute sensible, consistent, and operative."

The word "gifts" in the title is generic, but the word "gift" in the body of the act, used in connection with the words "devise" and "bequest," doubtless was intended to refer to gifts *inter vivos,* as distinguished from gifts by devise or bequest. The presumption that a word repeatedly used in the same statute bears the same meaning is of little weight. 26 Am. & Eng. Enc. Law (2d Ed.), p. 610. If a statute is susceptible of two constructions, that construction which renders it constitutional is to be chosen rather than the one which would render it unconstitutional, even though the latter may be the more natural interpretation of the language. *Grand Rapids Booming Co.* v. *Jarvis,* 30 Mich. 308; *Weimer* v. *Bunbury,* 30 Mich. 201; 8 Cyc. p. 606; 36 Cyc. p. 1112; Black on Interpretation of Laws, § 43.

A statutory interpretation invalidating a law upon constitutional grounds is adopted by the courts only when imperatively demanded. I do not regard the fact that the body of the statute deals in some measure with trusts as important, for the reason that a gift in trust, whether *inter vivos* or by bequest or devise, is nevertheless a gift, and as such is covered by the general term used in the title. The fact that this statute was enacted more than seven years ago should not be overlooked. It is to be presumed that, relying upon the act, charities have been established and estates have vested. Under such circumstances, it would be the duty of the court to decline to hold it invalid, even

if it was subject to the infirmities claimed by the appellants, but which, in my opinion, do not exist. *Stockle* v. *Silsbee*, 41 Mich. 615 (2 N. W. 900) ; *Continental Improvement Co.* v. *Phelps*, 47 Mich. 299 (11 N. W. 167).

The decree should stand affirmed.

McALVAY, KUHN, and MOORE, JJ., concurred with BROOKE, C. J.