**CHICAGO BANK OF COMMERCE v. Mc-PHERSON et. al.**

No. 2414.

District Court, W. D. Michigan, S. D.

July 6, 1931.

Altheimer & Mayer, of Chicago, Ill., for plaintiff.

Norris, McPherson, Harrington & Waer, of Grand Rapids, Mich., for defendants.

RAYMOND, District Judge.

By the bill of complaint filed herein the plaintiff, who sues as a grantee of Abbie F. Brundage and Reginald S. Ruggles, seeks a decree whereby certain trusts established by the last will and testament of Charles F. Ruggles shall be declared null and void. The bill of complaint sets forth that the legal heirs of testator are Harry F. Ruggles, Abbie F. Brundage, and Reginald S. Ruggles. Defendants are the executors and trustees under the last will and testament of Ruggles. It is alleged that plaintiff, as trustee, is the owner of an undivided two-thirds interest in the estate as tenant in common with Harry A. Ruggles who is not made a party. The prayer of the bill of complaint is, in substance, that two attempted trusts provided for in the will shall be decreed to be void and that all of the property and estate of the testator shall be decreed to descend as intestate property to the heirs at law of Ruggles.

The original will was executed March 31, 1926, four codicils being later executed bearing date respectively April 6, 1929, May 24, 1929, November 26, 1929, and March 31, 1930. The will and codicils were offered for probate in the probate court of Manistee county, Mich.; objections to the probate thereof were filed by Abbie F. Brundage and

Reginald S. Ruggles on alleged grounds of mental incapacity, undue influence, and invalid execution; and after a hearing the will and codicils were admitted to probate on January 23, 1931. On January 20, 1931, Abbie F. Brundage and Reginald S. Ruggles executed conveyances to Arthur Bevan, of Chicago, of all of their right, title, and interest in and to all of the property comprising the estate of testator, excepting a $10,000 legacy to Abbie F. Brundage. On January 24, 1931, Bevan executed a conveyance to the Chicago Bank of Commerce as trustee, covering the same property; the conveyance being made under the provisions of a trust agreement dated January 24, 1931, and known as "Trust No. 103."

In general, it is the claim of the plaintiffs that the trusts attempted to be created by subparagraphs (f) and (g) of paragraph 2 of the will here under consideration are void.

Subdivision (f) of paragraph 2 attempts to create a trust fund of $100,000, to be set aside by the trustees from the residue of the estate after payment of certain bequests, which fund, "with the income thereon, shall be used by said trustees in their discretion to provide from time to time, as may be required, financial assistance to such of my friends as may be in need of financial assistance or relief. I leave to the discretion of my trustees, who are familiar with my wishes, the determination of the persons entitled to assistance from said fund and the amount of assistance to be given. In the distribution of said fund my trustees are authorized to treat any person who has at any time been employed by me as a proper beneficiary of said fund. Any part of such fund and of the income accumulated thereon that may remain undisbursed when the survivor of said trustees John H. Rademaker and Charles McPherson shall cease to act as a trustee, shall revert to and become a part of the residue of my estate to be held for charitable, benevolent and educational purposes as hereinafter provided. If this provision of my will shall for any reason be invalid, said fund shall become a part of the residue of my estate to be held in trust for charitable, benevolent and educational purposes as hereinafter provided."

Paragraph 2 (g) of the will as modified by paragraph III of the fourth codicil is as follows: "I direct that the provisions of my will shall be so changed that the Trustees of the trust estate therein provided for shall have the right and power, in their discretion, to disburse the principal of said trust estate, as well as the net income thereof, for

such charitable, benevolent, educational and public welfare uses as said Trustees shall select, in such amounts, upon such terms and for such purposes as said Trustees, without discrimination because of race, nationality or religious belief shall decide to be most worthy. It is my desire and intent that said trust estate and the income thereof shall be devoted to charitable, benevolent, educational and public welfare uses in the state of Michigan, and that the Trustees may in their discretion organize a Michigan corporation to hold said trust estate and disburse the proceeds and income thereof for such purposes. It is my desire and intent that the reasonable needs and requirements of the inhabitants of Manistee County and of the charitable, benevolent, educational and public welfare institutions serving the inhabitants of said county shall at all times be given preference over the like needs and requirements of other persons and institutions in the disbursement of said trust estate and the income thereof."

Other portions of the will as modified by the codicils, and which are of importance in considering the questions involved, are appended hereto.

By the codicil of April 6, 1929, the appointment of John H. Rademaker as executor and trustee was revoked and Ewald J. Pfeifer was named as coexecutor and cotrustee in place of Rademaker.

Charles F. Ruggles died August 21, 1930, leaving an estate consisting of real and personal property, the inventory and appraisal of which discloses a value of approximately $4,195,000. The will, after providing for the payment of debts, the completion of certain contracts, and the payment of $240,000 in the form of specific bequests, provides for the trust funds here under consideration. It appears probable that the trust fund of the residuary estate will amount to several millions of dollars.

The first question presented is one of jurisdiction, it being contended by the defendants that the transfer by Abbie F. Brundage and Reginald S. Ruggles of their interest in the estate of testator is wholly void as contrary to the public policy of the state of Michigan, and that the transfers to plaintiff confer upon it no such title or interest in the property of the testator as will entitle plaintiff to maintain its bill of complaint. It appears from the provisions of trust agreement No. 103, under which plaintiff holds title to that portion of the estate here in suit, that the attorneys in event of recovery will be entitled to about 47 per cent. of the proceeds

and avails of this litigation. It is said that this is a violation of the principles of law prohibiting champerty and in violation of section 13593 of the Compiled Laws of Michigan of 1929, which provides: "No attorney or counselor shall, directly or indirectly, buy, or be in any manner interested in buying, any bond, promissory note, bill of exchange, book debt or other thing in action, with the intent and for the purpose of bringing any suit thereon."

It has been recently decided that the defense of champerty does not exist in the state of Michigan except as specified in Compiled Laws 1929, § 13600. See National Adjusting Ass'n v. Dallavo, 253 Mich. 239, 234 N. W. 485; also Wildey v. Crane, 63 Mich. 720, 30 N. W. 327. There is here no evidence to bring the case within the provisions of section 13593. Defendants rely strongly upon the case of In re Vanden Bosch's Estate, 207 Mich. 89, 173 N. W. 332, which decides that disinherited heirs have no standing in court to contest the probate of a will. There is a substantial difference between the issues upon the contest of a will and those raised by a bill to have trust provisions in a will declared void on behalf of those interested as heirs in an estate. No question is raised of the failure of plaintiff to make the resident heir of Ruggles a party to the suit. It seems clear upon the authority of Waterman v. Canal-Louisiana Bank & Trust Co., Executor, 215 U. S. 33, 30 S. Ct. 10, 54 L. Ed. 80; Ingersoll v. Coram, 211 U. S. 335, 29 S. Ct. 92, 53 L. Ed. 208, and Brown v. Fletcher, 235 U. S. 589, 35 S. Ct. 154, 59 L. Ed. 374, that this court has jurisdiction to determine whether the attempted trusts set up in the will here in question are valid.

With reference to the $100,000 trust fund attempted to be created by subdivision (f) of paragraph 2, the invalidity of which is urged by plaintiff, it is unnecessary to determine this question if it shall appear that the trust created in subdivision (g) paragraph 2 of the will is valid, because the clause of the will establishing this trust fund expressly provides that if for any reason this provision of the will be found invalid "said fund shall become a part of the residue of my estate to be held in trust for charitable, benevolent and educational purposes as hereinafter provided." In the view which the court takes of the validity of subparagraph (g), it is not important to consider the validity of this trust.

The most important question presented is whether the trust attempted to be created in subparagraph (g) is void. The various grounds upon which invalidity is urged by the plaintiff may be classified as follows:

1. The subject-matter and the objects of the attempted charitable trust are so uncertain and the beneficiaries thereof are so indefinite that a court of equity cannot enforce the provisions thereof, and therefore the trust is not within the scope of the Michigan statutes validating charitable trusts.

2. That benevolent, educational, and public welfare purposes are not necessarily charitable within the doctrine of charitable trusts, and that it is possible that under the provisions of the will a substantial part or all of the trust fund may be devoted to uses not charitable within the doctrine of charitable trusts, and that this consideration renders the attempted trust void.

3. That the discretionary powers vested in the trustees are based on personal trust and confidence and do not pass to their successor trustees notwithstanding the fact that the attempted trust is to be held in perpetuity and cannot in the nature of things be executed in the lifetime of the original trustees.

4. That there is no grant of powers to the successors who by the terms of the will are to be selected by the original trustees and that a court of chancery is powerless to vest them with any such powers.

5. That because of the unlimited powers of discretion vested in the original trustees it would be impossible for a court of equity by decree to compel the execution of the trust; and that the provisions of the subparagraph here under consideration amount to an absolute gift to the trustees and that this gift should be impressed with a trust in favor of the heirs at law.

The uncertainty which has long existed in the application of the doctrine of charitable trusts has been recognized by the authorities and so frequently that any review of the cases or of the progress of the law as applied thereto would be superfluous. A history of the development of the law, both in England and America, will be found in the first two chapters of Zollmann, American Law of Charities, and in Perry on Trusts and Trustees (7th Ed.) §§ 687 to 696, inc.

In the case of Hopkins v. Crossley, 132 Mich. 612, 96 N. W. 499, 501, it was held that the statute of Elizabeth, commonly called the "Statute of Charitable Uses," was repealed in Michigan in 1810, and that therefore the doctrine of charitable uses did not exist in this state. See, also, Stoepel v. Satter-

thwaite, 162 Mich. 457, 127 N. W. 673. Since the decision in Hopkins v. Crossley, the Legislature has enacted four laws which bear upon the subject of charitable trusts, namely, Act No. 122 of 1907; Act No. 125 of 1911; Act No. 280 of 1915; and Act No. 373 of 1925 (see Comp. Laws 1929, §§ 13512–13517). These acts, with their titles, are appended hereto. Since the passage of these acts they have been construed by the Supreme Court of Michigan in several cases. See Moore v. O'Leary, 180 Mich. 261, 146 N. W. 661, Ann. Cas. 1916A, 373; Loomis v. Mack, 183 Mich. 674, 150 N. W. 370; In re Brown's Estate, 198 Mich. 544, 165 N. W. 929; Appeal of Hannan, 227 Mich. 569, 199 N. W. 423; Scudder v. Security Trust Co., 238 Mich. 318, 213 N. W. 131; Greenman v. Phillips, 241 Mich. 464, 217 N. W. 1.

█ It must be recognized that the validity of the trust here under consideration should be determined and is governed by the law or policy of the state as expressed in the statutes or declared by the Supreme Court. Jones v. Habersham, 107 U. S. 174, 2 S. Ct. 336, 27 L. Ed. 401; Vidal et al. v. Girard's Executors, 43 U. S. (2 How.) 127, 11 L. Ed. 205; Executors of McDonogh et al. v. Murdoch et al., 56 U. S. (15 How.) 366, 14 L. Ed. 732; Bucher v. Cheshire Railroad Co., 125 U. S. 555, 8 S. Ct. 974, 31 L. Ed. 795; and Wood v. Paine et al. (C. C.) 66 F. 807. The decision of the questions involved in this case must therefore turn upon what is found, upon consideration of the statutes and the decisions above cited, to be the policy of the state of Michigan with reference to charitable trusts.

█ It is not without importance that the state of Michigan, after following a settled policy continued over a period of a century denying validity to charitable trusts, did by several acts of its Legislature decisively reverse that policy, and that upon each occasion it has broadened the scope of legislation thereon.

Writers upon the subject of charitable trusts have called attention to the discord among American courts. These authorities have, however, uniformly recognized the fact that the majority has adopted the more liberal rule in regard to gifts or bequests to charitable purposes and conclude that courts of equity have power to enforce and provide for the execution of such trusts where the will shows that the object, though expressed in general terms, is for a charitable use, especially where a trustee is appointed with the necessary power to make the proper selections. See Perry on Trusts & Trustees, §§ 713a, 713b; Zollmann, American Law of Charities, §§ 413, 433; 5 R. C. L. 340, 347; 11 C. J. 342, 343.

Consideration of the Michigan statutes and of the cited decisions of the Michigan Supreme Court leaves no doubt that it is now the settled policy of the state to adopt this liberal rule. See Zollmann, American Law of Charities, § 61. Neither can merit be found in the suggestion that benevolent, educational, and public welfare purposes are not charitable within the doctrine of charitable trusts. It is obvious that the Legislature of the state of Michigan has seen fit to so classify them. It is of course possible to give a meaning to each of the suggested illegal purposes that would bring them without the scope of the meaning of the word "charity" when strictly defined. They are all, however, within the broader definitions of the word "charity" which have been generally adopted by those American courts which approve the more liberal rules in considering charitable trusts. Should an attempt be made as suggested by plaintiff to operate an educational institution for private gain or to apply the trust fund to any purpose other than a charitable one, there can be no doubt of the power of the court of chancery to promptly and effectively restrain such use. Neither can it be said that the testator did not intend to vest discretionary powers in the successor trustees, the authority for whose appointment is given in the will. No other conclusion can be reached in this case than that the testator, confronted with the choice of leaving his large estate to distant relatives, or to vest certain persons with discretion under the supervisory control of the court of chancery to use the estate for beneficent purposes, deliberately chose the latter. He may have recognized the futility of an attempt to ascertain in advance and to designate with certainty either the objects of his charity or the persons to be designated as beneficiaries as the Legislature of Michigan certainly did in adopting Act No. 280 of the Public Acts of 1915. In the modern view of charities there are few who would question the wisdom of his choice or that of the Legislature in making such a selection possible.

It is the conclusion of the court that the trust here being considered is valid. A decree may be presented for signature in accordance herewith.

Paragraph 2: "I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, of which I shall die seized or

possessed, wherever the same may be situated, to John H. Rademaker of Manistee, Michigan, and Charles McPherson of Grand Rapids, Michigan, who have been employed by me for many years and in whose integrity I have confidence; In trust, however, for the following uses and purposes."

Subparagraph (c) of paragraph 2: "I direct my said trustees to carry out to complete performance and liquidation all of my contracts with the various persons and their assignees who at the time of my death shall have contracts with me entitling them to receive a portion of the proceeds of timber or other property under my control, and I authorize and direct my said trustees to use all, or any part, of my estate in carrying, developing and disposing of said property until such contracts shall be fully performed and liquidated so that those who have contracts with me shall not suffer needless injury or damage because of my death."

Subparagraph (i) is as follows: "In case the trustees shall not agree as to any action to be taken affecting any property in which, or in the proceeds of which, said John H. Rademaker shall at the time of my death be interested other than as one of said trustees, then as to such action the decision of said John H. Rademaker shall control and be the decision of the trustees and shall have the same force and effect as it would have if in such matter said John H. Rademaker were the sole trustee of said trust estate. It is my intent by this provision of my will to make it possible for said John H. Rademaker to protect himself from any action of the trustees which he shall deem injurious to his individual interest acquired during my lifetime."

Paragraph 2 (j): "Said Trustees may be written instrument signed by them and filed in the Probate Court of Manistee County, appoint their successor trustee or trustees and irrevocably fix and prescribe the manner in which successor trustees shall be thereafter appointed, to the end that said trust shall be administered in perpetuity by competent trustees."

Paragraph 2 (h): "Because of my belief that it is not wise to limit the discretion of trustees whose decisions may be greatly affected by changing conditions, I have not attempted to limit the discretion of the Trustees, and it is my intention that the decisions of the Trustees made in the exercise of their discretion in all matters affecting the administration of the trust shall be final, and that no Trustee shall be personally liable to my estate or to said trust, any beneficiary thereof or any other person, except for wilful and intentional appropriation of said trust fund or the income thereof to purposes which are neither charitable, benevolent nor educational."

Act No. 122 of 1907:

"An Act relative to gifts for religious, educational, charitable and benevolent purposes.

"The People of the State of Michigan enact:

"Section 1. No gift, grant, bequest or devise to religious, educational, charitable or benevolent uses which shall in other respects be valid under the laws of this State, shall be invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same, nor by reason of the same contravening any statute or rule against perpetuities. If in the instrument creating such a' gift, grant, bequest or devise, there is a trustee named to execute the same, the legal title to the lands or property given, granted, devised or bequeathed for such purposes, shall vest in such trustee. If no trustee shall be named in said instrument, or if a vacancy occurs in the trusteeship, then the trust shall vest in the court of chancery for the proper county, and shall be executed by some trustee appointed for that purpose by or under the direction of the court; and said court may make such orders or decrees as may be necessary to vest the title to said lands or property in the trustee so appointed.

"Sec. 2. The court of chancery for the proper county shall have jurisdiction and control over the gifts, grants, bequests and devises in all cases provided for by section one of this act. The prosecuting attorney of the county in which the court of chancery shall have jurisdiction and control shall represent the beneficiaries in all cases where they are uncertain or indefinite, and it shall be his duty to enforce such trusts by proper proceedings in the court, but he shall not be required to perform any duties in connection with such trusts in any court outside of this State."

Act No. 125 of 1911:

"An Act to amend the title and section one of act number one hundred twenty-two of the public acts of nineteen hundred seven, entitled 'An act relative to gifts for religious, educational, charitable and benevolent purposes,' approved June four, nineteen hundred seven.

"The People of the State of Michigan enact:

"Section 1. The title and section one of act number one hundred twenty-two of the public acts of nineteen hundred seven, entitled 'An act relative to gifts for religious, educational, charitable and benevolent purposes,' approved June four, nineteen hundred seven, are hereby amended to read as follows:

"An act relative to gifts for religious, educational, charitable or benevolent purposes or for the maintenance of cemeteries, or anything therein contained.

"Sec. 1. No gift, grant, bequest or devise to religious, educational, charitable or benevolent uses, or for the purpose of providing for the care or maintenance of any part of any cemetery, public or private, or anything therein contained, which shall in other respects be valid under the laws of this State, shall be invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same, nor by reason of the same contravening any statute or rule against perpetuities. If in the instrument creating such a gift, grant, bequest or devise, there is a trustee named to execute the same, the legal title to the lands or property given, granted, devised or bequeathed for such purposes, shall vest in such trustee. If no trustee shall be named in said instrument, or if a vacancy occurs in the trusteeship, then the trust shall vest in the court of chancery for the proper county, and shall be executed by some trustee appointed for that purpose by or under the direction of the court; and said court may make such orders or decrees as may be necessary to vest the title to said lands or property in the trustee so appointed."

Act No. 280 of 1915:

"An Act to establish the validity and to provide for the administration and control of gifts, grants, bequests and devises to religious, educational, charitable or benevolent uses, or for cemeteries, whether in trust or otherwise, which would be otherwise invalid by reason of indefiniteness or uncertainty of the object of such trust or of the persons designated as the beneficiaries thereunder in the instrument creating the same or by reason of contravening any statute or rule against perpetuities; and regulating the same; to establish the validity of all gifts, grants, devises or bequests made in pursuance of act one hundred twenty-two of the Public Acts of nineteen hundred seven and of the acts amendatory thereof, and all proceedings and acts performed in accordance therewith; and repealing act one hundred twenty-two of the Public Acts of nineteen hundred seven, and all amendments thereto.

"The People of the State of Michigan enact:

"Section 1. No gift, grant, bequest, or devise, whether in trust or otherwise to religious, educational, charitable or benevolent uses, or for the purpose of providing for the care or maintenance of any part of any cemetery, public or private, or anything therein contained which shall in other respects be valid under the laws of this State, shall be

invalid by reason of the indefiniteness or uncertainty of the object of such trust or of the persons designated as the beneficiaries thereunder in the instrument creating the same, nor by reason of the same contravening any statute or rule against perpetuities. If in the instrument creating such a gift, grant, bequest or devise, there is a trustee named to execute the same, the legal title to the lands or property given, granted, devised or bequeathed for such purposes, shall vest in such trustee. If no such trustee shall be named in said instrument or if a vacancy occurs in the trusteeship, then the trust shall vest in the court of chancery for the proper county, and shall be executed by some trustee appointed for that purpose by or under the direction of the court; and said court may make such orders or decrees as may be necessary to vest the title to said lands or property in the trustee so appointed.

"Sec. 2. The court of chancery for the proper county shall have jurisdiction and control over the gifts, grants, bequests and devises in all cases provided for by section one of this act. Every such trust shall be liberally construed by such court so that the intentions of the creator thereof shall be carried out whenever possible. The prosecuting attorney of the county in which the court of chancery shall have jurisdiction and control shall represent the beneficiaries in all cases where they are uncertain or indefinite, and it shall be his duty to enforce such trusts by proper proceedings in the court, but he shall not be required to perform any duties in connection with such trusts in any court outside of this State.

"Sec. 3. All gifts, grants, devises or bequests made in pursuance to the provisions of act number one hundred twenty-two of the Public Acts of nineteen hundred seven and of the acts amendatory thereof, and all proceedings and acts performed in accordance therewith are hereby validated.

"Sec. 4. Act one hundred twenty-two of the Public Acts of nineteen hundred seven and all amendments thereto are hereby repealed."

Act No. 373 of 1925:

"An Act to relieve gifts, grants, devises and bequests, in trust or otherwise, for public welfare purposes, from the operation of all statutory and all common law rules of this state against perpetuities and restraint of alienation, to define said purposes, and to provide a rule of construction.

"The People of the State of Michigan enact:

"Section 1. No statutory or common law rule of this state against perpetuities or restraint of alienation shall hereafter invalidate any gift, grant, devise or bequest, in trust or otherwise, for public welfare purposes.

"Sec. 2. Public welfare purposes are defined to be all lawful purposes beneficial to the public as a whole."