## McPHERSON v. BYRNE.

1. GIFTS—GIFTS CAUSA MORTIS—BONA FIDES—BURDEN OF PROOF.
   In an action of trover by an administrator against a person who occupied the position of confidential and spiritual adviser, and claimed the property as a gift causa mortis, the burden of proof to establish such gift is upon the donee.

2. SAME—CHARITIES—PURPOSE—EVIDENCE—SUFFICIENCY—APPEAL AND ERROR.
   In such action, where the evidence, examined as a whole, discloses an attempt to make a gift for charitable purposes with the particular charity left wholly indefinite, and on the trial defendant's counsel conceded that if the claimed gift was not absolute to defendant it could not be sustained, there was no question of fact to be submitted to the jury, and error in the charge as given will not be considered.

Error to Kent; Perkins, J. Submitted November 13, 1908. (Docket No. 47.) Decided January 4, 1909.

Trover by Peter W. McPherson, administrator of the

estate of Ann Van Dyke, deceased, against James J. Byrne for the conversion of certain certificates of deposit claimed as a gift.   There was judgment for plaintiff, and defendant brings error.   Affirmed.

*McKnight & McAllister*, for appellant.

*Maher & Barnard*, for appellee.

MONTGOMERY, J.   This action is brought by the administrator to recover of the defendant the value of three certificates of deposit, amounting to $2,060, which were delivered by the deceased, Ann Van Dyke, prior to her death, to the defendant.   The defendant is a priest of the Roman Catholic Church, and was in charge of the church at Parnell, Mich., where deceased resided.   She was a communicant of the church.   A few days before her death, and while in her last sickness, she delivered the certificates in question to the defendant.   He has used certain of the proceeds to pay funeral expenses and for a monument for the deceased.   The plaintiff recovered a verdict at the hands of a jury.

The defendant claimed that these certificates were delivered to him as a gift outright, and without any limitation, unless it were that he should pay the funeral expenses of the deceased.   The circuit judge correctly charged the jury that, where a gift is claimed to have been made to a spiritual adviser of a person in extremis, the burden of proof to show the good faith of the transaction rests upon the donee.   It is claimed, however, that the circuit judge in his charge to the jury required something more than the burden of proof to sustain the claim of the defendant.   It is also claimed that error was committed in permitting plaintiff's counsel to cross-examine the defendant in such a manner as to create a religious prejudice against him, and also that the charge of the court was argumentative and misleading in other respects. That the burden of proof in such a case as this rests upon the one occupying a confidential relation, is clearly settled

by the authorities. See *In re Bromley's Estate*, 113 Mich. 53; *Ross* v. *Conway*, 92 Cal. 632.

The only evidence offered to show the gift in this case, and to show the want of undue influence, was that of Julia Toohey. It appears that a proceeding was instituted some two years after the death of Mrs. Van Dyke by Agnes Quillan, a niece, claiming that Mrs. Van Dyke left $1,000 of the money transferred to him in trust for her. In this proceeding Mrs. Toohey was a witness, and testified that she was present at the time this transfer was made; that deceased called to her and asked for a little handbag that had some papers in, and requested her to hand it to Father Byrne, who sat by her bedside. She further testified:

"*A.* I heard her say she was giving them all to him for charitable purposes. She wanted him to do whatever was best, to give them to charity; and he wanted to know if there was any left if he should give some to her relatives, her brother, etc., and she said 'No;' she had given them enough. And she had told that to me many times too. She said what little she had she wanted it for masses and charitable purposes and for expenses, different expenses, doctor bills and funeral purposes, etc.

"*Q.* She wanted him to use it for charitable purposes?

"*A.* Charitable purposes.

"*Q.* As in his judgment—

"*A.* As in his judgment, just as he wished, as he decided."

On cross-examination she was asked:

"*Q.* What she said to him was, he was to pay her funeral expenses and doctor bills?

"*A.* All expenses; yes.

"*Q.* And the rest of it he was to use for charity?

"*A.* Yes, sir.

"*Q.* He was not directed to use it for anything else than charity?

"*A.* Whatever he desired in the charitable line. And she told me after he went out that she hoped he would do so, and she trusted he would.

"*Q.* And it was altogether a matter of charitable purposes that she was leaving the money to him for?

"*A*. Yes; paying up her debts and bills.

"*Q*. Paying up her debts and charitable purposes?

"*A*. And the monument he got."

We, of course, recognize that this witness might change her testimony and now state the facts differently in such a way as to leave the question of fact a question for the jury. The question is: Did she do so? On this trial she testified on direct examination:

"*Q*. What did she say to him about it?

"*A*. She said she wanted him to have that money; she was giving it to him.

"*Q*. Did he say anything to that?

"*A*. Yes; he made answer, and says: 'Well, won't you leave some to your brother Mike?' 'No,' she had given her relatives enough during her life, she wanted that for him. 'Well,' he says, 'what will I do with it?' 'Well, just as you please. Do with it just as you wish.'

"*Q*. Is that about all the conversation concerning the certificates?

"*A*. Well, I guess they talked a little more about that, a little more about it, but it did not concern very much.

"*Q*. Do you recall anything further that was said about it?

"*A*. No; I heard him say he would use it for charitable purposes or just as she wished. She said to him to do as he wished with it, charitable purposes or whatever he had a mind to put it to.

"*Q*. Do whatever he had a mind to?

"*A*. Yes; and to pay her expenses."

On cross-examination her attention was called to the testimony which she had given on the former hearing between defendant and Agnes Quillan, and she testified that her recollection at that time was as good as on the present trial, and that what she then testified to was true, as she supposed and believed, and answered the question, "Now, you mean by that, don't you, that she said he was to use that money for charitable purposes?' by, 'Of course, he spoke to her that way." On redirect examination she was again asked to state the transaction, and she stated it as follows:

"*A.* She took them out, and she told him then, explained to him: ' This is for you.   *   *   *   This is for you, Father Byrne.'   And, if I am not mistaken, he says: ' For who?'   ' Yes,' she says, ' I am going to give this to you.'   And he says, 'Are you going to leave a little of this here to your brother Mike?'   She said:   'No; I left—I give them all my lifetime, and I intend to give what I have left after my death to you, to do as you wish with it.'   ' Well,' he says, ' I suppose for charitable purposes ?'   She says, ' Yes; just as you desire.   Use it for charity, just as you wish.'

"*Q.* That was all she said?

"*A.* Of course, there was a little more.   Charity was spoken about and they spoke about certain things there, and I guess fixed it right up.

"*Q.* Something said about the expenses?

"*A.* Yes; there was said about the expenses too.   Of course, I repeated that before.   She said:   ' Pay all my expenses when I die.'

"*Q.* After she made the statement that she wanted her expenses paid, did she say anything then with reference to the rest of it?

"*A.* No; I don't think she did.   She didn't say any more."

Taking this testimony as a whole—and it should be so read—there is no apparent conflict between the testimony on the trial between defendant and Agnes Quillan and that given on the present trial.   She concludes her statement as to what the conversation was by a distinct statement that deceased said to defendant in respect to his suggestion that he supposed the money was to be used for charitable purposes:

"Yes; just as you desire.   Use it for charity, just as you wish."

The transaction cannot be distorted into anything other than an attempt to make a gift for charitable purposes with the charity wholly indefinite.   On the trial it was conceded by defendant's counsel that if the gift in controversy was not for the defendant's own use, but was for charitable purposes only, without naming the charitable purposes for which the funds were to be used, it could not

be sustained as a gift.   In view of this concession, we think no question of fact was left to be submitted to the jury, and it becomes unnecessary to consider the errors alleged in the charge of the court.

The correct conclusion was reached, and the judgment is affirmed.

Ostrander, Hooker, Moore, and McAlvay, JJ., concurred.