MOORE *v.* O'LEARY.

1. WILLS—TRUSTS—CHARITABLE TRUST—VALIDITY.
   A bequest of real and personal property to a person named, to be disposed of by the beneficiary for charitable purposes, as the testatrix had previously orally instructed her, was invalid, for the reason that the disposition of property by testamentary act must be by writing and may not be partly oral, and partly in writing.

2. TRUSTS—PARTIES—CHARITABLE USES.
   At common law a trust without a designated beneficiary who could enforce it was void.

3. WILLS—STATUTES—CHARITABLE USES.
   Act No. 122, Pub. Acts 1907, as amended by Act No. 125, Pub. Acts 1911 (4 How. Stat. [2d Ed.] §§ 10700, 10701), validating charitable trusts where there is uncertainty or indefiniteness of beneficiaries, does not, however, make an instrument valid, which is insufficient as a testamentary disposition of property.

Appeal from St. Clair; Law, J. Submitted January 19, 1914. (Docket No. 77.) Decided April 7, 1914.

Bill by Alexander Moore, as executor of the estate of Alice O'Leary, deceased, against James A. O'Leary and others for the construction of a will. From a decree for complainant, defendants appeal. Reversed.

*J. F. Wilson,* for complainant.

*Lincoln Avery,* for defendants.

The issue made by the pleadings involves the legal effect of a clause in the codicil to the last will and testament of Alice O'Leary, deceased. The fourth clause of the will is:

"I bequeath all the residue of my estate and effects whatsoever and wheresoever situated, after payment of my debts, funeral and testamentary expenses, and of the legacies bequeathed by my will unto Mary E. Clary and William J. Denler."

The codicil, so far as its terms are here important, is:

"I desire to eliminate the provision in said will for William J. Denler and leave all property mentioned in clause four of said will to Mary E. Clary, to be disposed of by her as I have heretofore instructed her for charitable purposes and a bequest to St. Stephen's church of Port Huron, Michigan, towards the purchase of an organ."

The record does not disclose how much of the estate of the testatrix is real and how much is personal property, nor, except by inference, the value of the estate. Power is given to the executor to sell and convey all of the estate, "both real and personal." The will was made February 25, 1911; the codicil April 8, 1912. The residue of the estate is said in the briefs to amount to about $12,000. Mary E. Clary was sworn as a witness at the hearing and gave testi-

mony to the effect that she was not related to the testatrix but had been in her employment and had lived with her for more than 13 years. The testatrix gave her, she says, no written instructions as to a disposition of her property. Witness had a list, made by herself, of various charities, and knew, or was able to learn, what contributions the testatrix had habitually made to them, and some, if not all of them, had been mentioned in conversations between witness and the testatrix as objects of her bounty.

"*Q.* Then previous to the making of this will that is now before the court she had told you that she wanted you to take the residue of her estate and go along and do just as she had done?

"*A.* Yes, and that was as near as what she told me to do, the different places she had told me.

"*Q.* That is to give to charity?

"*A.* Yes, while the money would last."

Concerning the instructions given her by the testatrix, she said she was to give $1,000 towards purchasing an organ for St. Stephen's; about $20 annually, while the money lasted, to the Home for the Aged of the Little Sisters of the Poor at Detroit, Mich.; $10 or more annually, "of course according to the amount on hand," to St. Joseph's Home for Boys at Detroit; the same amount to St. Vincent's Hospital and St. Francis Home for Boys at Highland Park; $20 to St. John's Protectory at Lackawanna, N. Y. A number of other institutions were mentioned, but the foregoing sufficiently illustrates the alleged instructions. About a dollar a day, or $350 a year, was to be paid for masses. This witness also gave the following testimony:

"Well, I would have authority when the courts turned all this property, the residue of the estate, over to me, I was to dispose of it to best advantage, not to be in such a hurry to sell it out at less than its value, and she didn't want this kept in the courts used up that way, the principal or the proceeds of the estate,

and in that way she left it to me, and I was to just take that and sell out the property according as I had the opportunity, and turn that money in to be used for these purposes, and I was to use it up along every year all that would come into my hands for that purpose.

"*Q.* And the amount you were to advance from year to year why you could, of course, increase it or diminish it if you thought it was a proper thing to do?

"*A.* Yes.

"*Q.* Is that your idea?

"*A.* Yes, in most of the cases I could give more if I had the money on hand.

"*Q.* And if you didn't want to give more you would hold it and give it next year, if you thought it was proper, and hold it up and give it the following year?

"*A.* I can't say as I would be justified in doing that; each year would have to take care of itself.

"*Q.* Now, if some new worthy purpose came along, what would you do with that, if it was similar to some of the institutions she had been giving to while she was here?

"*A.* I suppose if I had the money, extra money on hand, I would have to contribute to that.

"*Q.* If in your judgment it was the proper thing to give it?

"*A.* Yes, sir.

"*Q.* You would feel it your duty to do it under your understanding with her?

"*A.* Yes, sir.

"*Q.* And you would think you would not be doing right unless you did it, would you?

"*A.* No, but I should have to take care of the other ones first that I knew that she had given to.

"*Q.* That is, that you had given to?

"*A.* Yes, sir."

The court determined that the codicil revoking the clause of the will is valid and operative, "creating a gift and bequest for religious, educational, charitable and benevolent uses," and that the title to the residue of the estate vested in Mary E. Clary, as trustee; that the trust shall be executed under and subject to the directions of the circuit court, in chancery, for

the county of St. Clair, to which court the trustee shall account for all receipts and disbursements in connection with the administration of the trust, and to which court she may apply for orders. To the giving of testimony by Miss Clary, the following objections were made:

"(1) She is interested in the subject-matter.

"(2) Her knowledge is equally within that of deceased and barred by the statute.

"(3) The will and codicil must control as drawn and cannot be changed or added to by oral testimony.

"(4) The objects of the charity rest in parol.

"(5) The testimony is not competent under section 8839, M. C. L. 1897, or P. A. 122, 1907."

And appellants present in this court the following questions:

"(1) Is the codicil, as drawn, an effective disposition of the residue of this estate?

"(2) Must a gift, to be valid, attach itself to a definite charity, on the face of the will?

"(3) Is it necessary to name or designate a beneficiary in a will?

"(4) Can oral testimony be resorted to, to select a particular purpose or charity or name the beneficiaries or amounts, when not expressed in some form or indicated in some manner by the language used in the will?

"(5) Can the court receive Miss Clary's testimony for the purpose of designating beneficiaries and amounts, or to establish a will by oral testamentary disposing of $12,000 worth of property?

"(6) Does Act 122, P. A. 1907, repeal section 8839, M. C. L. 1897, and other statutes, and establish the *cy pres* doctrine in Michigan?"

Act No. 122, Pub. Acts 1907, as amended by Act No. 125, Pub. Acts 1911, is as follows (4 How. Stat. [2d Ed.] § 10700):

"An act relative to gifts for religious, educational, charitable or benevolent purposes or for the maintenance of cemeteries, or anything therein contained.

"SECTION 1. No gift, grant, bequest or devise to religious, educational, charitable or benevolent uses, or for the purpose of providing for the care or maintenance of any part of any cemetery, public or private, or anything therein contained, which shall in other respects be valid under the laws of this State, shall be invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same, nor by reason of the same contravening any statute or rule against perpetuities. If in the instrument creating such a gift, grant, bequest or devise, there is a trustee named to execute the same, the legal title to the lands or property given, granted, devised or bequeathed for such purposes, shall vest in such trustee. If no trustee shall be named in said instrument, or if a vacancy occurs in the trusteeship, then the trust shall vest in the court of chancery for the proper county, and shall be executed by some trustee appointed for that purpose by or under the direction of the court; and said court may make such orders or decrees as may be necessary to vest the title to said lands or property in the trustee so appointed.

"SEC. 2. The court of chancery for the proper county shall have jurisdiction and control over the gifts, grants, bequests and devises in all cases provided for by section one of this act. The prosecuting attorney of the county in which the court of chancery shall have jurisdiction and control shall represent the beneficiaries in all cases where they are uncertain or indefinite, and it shall be his duty to enforce such trusts by proper proceedings in the court, but he shall not be required to perform any duties in connection with such trusts in any court outside of this State."

OSTRANDER, J. *(after stating the facts)*. The testatrix has not indicated, in her testament, the objects of her bounty, specially or generally, except that St. Stephen's Church of Port Huron is named as a beneficiary, and the purpose of the gift to it, but not the amount of the gift, is stated. No scheme of charity or of charitable distribution is indicated, nor whether individuals or private or public institutions are objects of her bounty. A purpose to devote the residue

of her estate to charity is indicated, but not a purpose to devote it to charity generally. The trustee nominated in the codicil has been instructed, and therefore the idea of a selection of beneficiaries by the trustee is apparently excluded. It is plain that the intention of the testatrix cannot be ascertained from the will itself, beyond this: That she intended to create a trust and, through a trustee whom she has nominated and has instructed, to devote to St. Stephen's Church and to other charitable purposes the residue of her estate. I think decision may be safely rested here, not because, as is contended by counsel for appellants, the trust attempted to be created does not satisfy the requirements of our statute of uses and trusts, that statute affecting real property only (*Ledyard's Appeal,* 51 Mich. 623 [17 N. W. 208]; *Hopkins* v. *Crossley,* 132 Mich. 612 [96 N. W. 499]), and we might, other objections aside, apply here the doctrine of equitable conversion and treat all of testatrix's property as personalty, but because, in this State, the disposition of property, real or personal, by will must be by writing, attested by two witnesses. The instrument before us is such a writing, but the trust attempted to be created is not contained therein. See *Wilcox* v. *Attorney General,* 207 Mass. 198 (93 N. E. 599, Ann. Cas. 1912A, 833, and note).

I do not mean to hold, and the case does not involve the point, that a valid trust for charitable uses may not now be created by will; the selection of the particular beneficiaries from a class, or according to a charitable scheme, indicated in the will, being left to a trustee or to the court. In such a case it might be said, what cannot be said here, that the intention of the testator was expressed in the will, and the disposition of property attempted was complete.

Counsel for complainant is of opinion, and to this the learned trial court must have agreed, that the statute of 1907 has introduced into the State the doc-

trine of charitable uses, and that according thereto the trust in question here may be sustained.  In this I think he is mistaken, not, indeed, in thinking that the statute has to some extent introduced the doctrine of charitable uses, but in supposing that the doctrine may be invoked to sustain this trust.  Except as introduced by this statute, the doctrine has never obtained in this State *(Methodist Church of Newark* v. *Clark,* 41 Mich. 730 [3 N. W. 207] ; *Hopkins* v. *Crossley,* 132 Mich. 612 [96 N. W. 499]), whether the trust fund was real estate or was personalty, or the object private or public benefaction.  The rule which has been in force here is the rule of the common law, expressed in *Morice* v. *Bishop of Durham,* 9 Vesey, 399, as follows:

"If there be a clear trust, but for uncertain objects, the property that is the subject of the trust is undisposed of; and the benefit of such trust must result to those to whom the law gives the ownership in default of disposition by the former owner."

And as stated in *Levy* v. *Levy,* 33 N. Y. 97:

"A 'charitable trust' is simply an indefinite or uncertain trust—a trust without a beneficiary; and certainly a trust of that description is void by the rules of the common law as it existed at the time of adoption by us, and now exists.  If there is a single postulate of the common law established by an unbroken line of decisions, it is that a trust without a certain beneficiary who can claim its enforcement, is void, whether good or bad, wise, or unwise."

See, also, *Tilden* v. *Green,* 130 N. Y. 29 (28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487) ; *Wheelock* v. *American Tract Society,* 109 Mich. 141 (66 N. W. 955, 63 Am. St. Rep. 578) ; *Stoepel* v. *Satterthwaite,* 162 Mich. 457 (127 N. W. 673) ; *McPherson* v. *Byrne,* 155 Mich. 338 (118 N. W. 985).  I find no decisions of this court which, as respects the rule that the beneficiaries of a trust shall be certain, have distinguished

between charitable and other trusts. Whether it would have been more reasonable to have excepted from the rule trusts for public charity, the beneficiaries of which must of necessity be uncertain, at least in cases where the gift or bequest was personal property (Perry on Trusts, § 687; *Dodge* v. *Williams,* 46 Wis. 95-98 [1 N. W. 92, 50 N. W. 1103]; *Harrington* v. *Pier,* 105 Wis. 485 [82 N. W. 345, 50 L. R. A. 307, 76 Am. St. Rep. 924]; *Dulles's Estate,* 218 Pa. 162 [67 Atl. 49, 12 L. R. A. (N. S.) 1177]), is a matter about which men may differ in opinion, but, as has been stated, no such exception has been made. What the prevailing rule has been is of interest in determining what change in the law the statute of 1907 has made.

The statute relates only to gifts, etc., to religious, educational, charitable, or benevolent uses, and to those only which are in other respects (except in respect to matters to be remedied by the statute) valid under the laws of the State. No such gift, is the legislative declaration, shall be invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same, nor by reason of the same contravening any statute or rule against perpetuities. I have pointed out that no beneficiary, excepting St. Stephen's Church, is designated in the will, and also that the idea of an indefinite beneficiary is excluded, and the idea of a certain, but not validly declared, beneficiary is included, by the words employed.

It is said our statute was borrowed from New York, where, in 1893, a statute similar, but not containing the provision relative to perpetuities, was enacted, and before its enactment here was construed by the court of last resort of that State. It is urged on the part of complainant that the statute must be considered as adopted here with the meaning and effect given it

by the New York court. In *Allen* v. *Stevens*, 161 N. Y. 122 (55 N. E. 568), the court considered, in the light of the statute, a clause in a will reading as follows:

"*Tenth.* I give, bequeath and devise all the rest and residue of my property of every kind, personal and real, wherever situate, to my trustees hereinafter named for the purpose of founding, erecting and maintaining Graves Home for the Aged, to be located in the city of Syracuse, in the State of New York. It is intended as a home for those who by misfortune have become incapable of providing for themselves and those who have slender means of support. The institution to be known as the Graves Home for the Aged. I hereby appoint Charles E. Stevens, Rasselas A. Bonta, and Maurice A. Graves for the trustees to execute the above trust. I hereby authorize and empower my executors, or the survivor of them, to rent or sell any part or all of my real estate that I may own at the time of my death. They are authorized to employ a person or persons to have charge of the real estate, to collect rents, make & to repairs, and to pay such sums for compensation as they may deem reasonable and proper.

"After my executors have executed their trust and paid all the legatees provided for in this will they are authorized and directed to convey to the said trustees above named the balance and remainder of my property of every kind to be applied for the purposes above provided, and the said trustees, or the survivor, are authorized to rent or sell all or any part of my real or personal property and to employ such agents as they may deem proper to take charge of the same and pay them such compensation as they deem best."

There was a dissenting opinion, but the provision of the will was sustained. It is said in the majority opinion that:

"Reading the statute in the light of the events to which reference has been made, it seems to me very clear that the legislature intended to restore the law of charitable trusts as declared in the *Williams Case;* that having discovered that legislative enactment had

operated to take away the power of the courts of equity to administer trusts that were indefinite as to beneficiaries, and had declared a permanent charity void unless the devise in trust was to a corporation already formed or to one to be created, it sought to restore that which had been taken away through another enactment. This is markedly indicated, not only by the absence of details in the statute, which is broadly entitled 'An act to regulate gifts for charitable purposes,' but also in the brevity of the statute, which confers all power over such trusts and trustees on the Supreme Court and directs the attorney general to represent the beneficiaries in cases within the purview of the statute, as was the practice in England. Practical effect can be given to the provision that no devise or bequest shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as beneficiaries only by treating it as a part of a general scheme to restore to the courts of equity the power formerly exercised by chancery in the regulation of gifts for charitable purposes, for, in order to ascertain the class of persons who were entitled to the benefits of the trust, the rule formerly in force must necessarily be invoked by which the court ascertained, as nearly as possible, the intention of the testator, by decree adjudged, who were intended to be the beneficiaries of the trust and directed its administration accordingly."

It is this declaration of the legislative purpose and of amended state policy which counsel for complainant regard as adopted in this State with the adoption of the statute. It ought to be said, perhaps, that the effect of a new statute upon the law and policy of a State depends upon the existing state of the law and the policies theretofore declared. The same law adopted in different States might have a varying effect upon the existing laws and policies of each State. The history of the particular subject in the State of New York has not been repeated in this State. Therefore, the adoption of the particular statute from New York, and the rule relied upon by complainant, are not necessarily conclusive of the effect to be given the

statute here. In so far as the statute had been applied in New York to particular facts, and its meaning and effect thus determined, we think the rule should be observed, unless our statute and policies dissimilar to those of New York forbid it. The effect of the decision of *Allen* v. *Stevens,* and of cases since decided *(Matter of Griffin,* 167 N. Y. 71 [60 N. E. 284]; *Matter of Graves,* 171 N. Y. 40 [63 N. E. 787]; *Murray* v. *Miller,* 178 N. Y. 316 [70 N. E. 870]; *Rothschild* v. *Schiff,* 188 N. Y. 327 [80 N. E. 1030]; *St. John* v. *Andrews Institute,* 191 N. Y. 254 [83 N. E. 981, 14 Am. & Eng. Ann. Cas. 708]; *Matter of Shattuck,* 193 N. Y. 446 [86 N. E. 455]; *Matter of Cunningham,* 206 N. Y. 601 [100 N. E. 437]), is that, since the enactment of the law referred to, gifts in trust for public charitable purposes are not void for the uncertainty and indefiniteness of the beneficiaries, if the purpose of the trust is defined with sufficient certainty to be carried out by the court. It was expressly held *(Matter of Shattuck, supra)* that it was not the purpose of the act to preserve gifts to private institutions or individuals, and when the selection of the beneficiaries of a trust is left to the discretion of a trustee, subject only to the limitation that they shall be "religious, educational, or eleemosynary institutions," the trust is void, because the word "educational," as used, does not necessarily describe a public or charitable institution, within the meaning of the act. It was said:

"In this will the testatrix, without defining the use to which the income of the trust fund is to be applied, directs generally that it be paid over to such particular ones of certain institutions as in the judgment of the trustee seems advisable. The power of the court to control the trustee is bounded by the directions of the testatrix. It cannot add to or take from the terms of this will properly construed any more than it could if the testatrix had specified by name the particular institutions entitled to the income of the trust fund,

and she had included among them one or more manufacturing or transportation corporations. The possible devotion of the income of said trust in whole or in part to private use necessarily affects the entire gift and requires that the same shall be held invalid."

It is further pointed out that a school, unless it is a free school, does not come within the enumeration of charities in the statute 43 Elizabeth, chap. 4. Assuming that our statute should have the meaning and effect which were given to the New York law before its adoption here, it is evident that the purpose of the trust we are considering is not defined with sufficient certainty in the instrument creating it to be carried out by the court. There was a time when the English court of chancery would perhaps have seized upon the general statement of the testatrix that the estate was to be disposed of for charitable purposes, have ascertained, as best it could, the intentions of the testatrix or what were her favorite charities, and disposed of the fund in conformity, "as near as may be," with her ascertained desires; in any event, would have disposed of it for charitable purposes. The *cy pres* doctrine was carried to extravagant lengths in some decisions. The subject is treated generally in 6 Cyc. p. 961 *et seq.* A late case *(Blair* v. *Duncan,* 27 App. Cases, 37, decided in the House of Lords in 1901) indicates the trend of modern decisions. In that case a testatrix, by codicil, directed her trustee that, in events which happened, one-half of the residue of her estate should be applied "for such charitable or public purposes as my trustee thinks proper." It was held the direction was void for uncertainty; that the words "charitable" and "public" were used disjunctively; and that the disposition given to the trustee to determine what particular public purposes should be the objects of the trust is too vague and uncertain for any court to administer.

180 MICH.—18.

In my opinion, the trust in question here is invalid: *First,* because it is not evidenced according to law, and the unexpressed will of the testatrix cannot be given expression by parol; *second,* because the intended beneficiaries are not, upon the instrument creating the bequest, uncertain or indefinite within the meaning of the statute.

It follows that the decree must be reversed and a decree entered in this court adjudging the trust attempted to be created by the codicil to the will to be invalid. Appellee may have his actual costs and expenses allowed, as a disbursement, out of the fund. Appellants may, if they choose, have a decree for costs payable out of the fund.

MCALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.