*In re* BAILEY'S ESTATE.

WILLIAMS *v.* BAILEY.

1. WILLS—EVIDENCE—VALIDITY.
    In determining the validity of a codicil to decedent's will, which contestants claim was effected by undue influence, the consistency, reasonableness and propriety of the codicil were matters to be considered in deciding whether decedent had been unduly influenced.

2. SAME—APPEAL AND• ERROR—CHARGE.
    But, wanting requests to so charge the jury, appellant was not entitled to a reversal for failure of the court to advise the jury of the weight to be given to the subject.

3. SAME—EVIDENCE—FINANCIAL CONDITION.
    Evidence that one of the contestant's daughters had to take in washings to help support her father was incompetent and was improperly admitted.

4. SAME—BURDEN OF PROOF—UNDUE INFLUENCE.
    Though evidence in a will contest showed that the devise was made to a religious organization, that one of its ministers, who helped testatrix to prepare the codicil, was also her spiritual adviser, it only raised a rebuttable presumption that the devise was invalid for undue influence. The burden of proof to show undue influence continued to rest on the contestants.

5. APPEAL AND ERROR—PRESUMPTIONS. ·
    The presumption is that the jury followed the incorrect one of two conflicting instructions.
    KUHN, BIRD, and MOORE, JJ., dissenting.

Error to Macomb; Tucker, J. Submitted January 20, 1914. (Docket No. 88.) Decided June 14, 1915.

The will of Lydia Bailey, deceased, was admitted to probate and Stephen Bailey, contestant, appealed to circuit court. Judgment for contestant; proponent brings error. Reversed.

*Miller, Smith, Paddock & Perry,* for appellant.

*William T. Hosner* (*Erskine & Lungerhausen,* of counsel), for appellee.

BIRD, J. (*dissenting*). The paper offered as the last will and testament of Lydia Bailey was set aside in the Macomb circuit court by a jury on the grounds of defective execution and undue influence. The testatrix was a maiden lady, who resided at Romeo. Her nearest of kin was a brother, Stephen Bailey. The value of her estate was nearly $8,000, and consisted mostly of real property. In August, 1905, she made a will and devised in trust the bulk of her estate to the Bishop of the Protestant Episcopal Church in the diocese of Michigan, for the use of such church in the village of Romeo. In November, 1909, she added a codicil, and in April, 1911, she added another. The will was offered for probate by Bishop Williams, and was allowed in the probate court. Stephen Bailey, the brother of testatrix, then took an appeal and contested the will in the circuit court, where it was disallowed.

1. The first question raised is the refusal of the trial court to dismiss the appeal following the death of Stephen Bailey. It appears that after an appeal was perfected and before trial, Stephen Bailey died, and his administrator was substituted in his stead. It is argued by the proponent that the proceeding is a purely statutory one, and that, inasmuch as the statute has made no provision for the survival of such an action, the action died with Stephen Bailey. While it is true that probate proceedings are very largely based upon the statute, it is also true that the statute provides for the descent and distribution of property and the probating of wills. The parties in interest to a proceeding to probate a will are the beneficiaries under the will, and those upon whom

the law would cast the property in the event that the will was set aside, and the courts have repeatedly held that these persons have such an interest as entitles them to be heard in defense of their rights. See *Taff* v. *Hosmer,* 14 Mich. 249, 255; *Dudley* v. *Gates,* 124 Mich. 440 (83 N. W. 97, 86 N. W. 959).

In the case of *Alden* v. *Johnson,* 63 Iowa, 124 (18 N. W. 696), objection was made that contestants did not have such interest as permitted them to contest, and the court said:

"If the will be set aside, they will share in the property of the estate; they have therein an interest contingent upon the validity of the will. There is no rule of the law which will bar the doors of the courts when they seek to enter, asking the judicial determination, of the law and the facts whereon they base their claim to the property."

It was likewise held in *Brewer* v. *Barrett,* 58 Md. 587, that the next of kin of one of the testator's next of kin who had died intestate subsequent to the death of the testator, might contest the will.

The precise point was raised in the case of *Van Alen, Executor,* v. *Hewins,* 5 Hun (N. Y.), 44. One Calvin Drake died, leaving a last will and testament. Lucy Hewins, the only child and next of kin, contested the will. Before the matter was brought to a determination, Lucy Hewins died, and an executor was appointed upon her estate. He assumed the prosecution of the contest, and was met with the objection that the action did not survive; but the court held that:

"Probate merely authenticates an instrument propounded as a will. The effect of it is to establish the words of the probate as the legal will of the deceased. It is a *quasi* proceeding *in rem.* Such a proceeding cannot, in the nature of things, abate by the death of either of a proponent or a contestant. It must of necessity be continued until the instrument pro-

pounded be admitted to probate, or probate thereof be refused."

Upon the question of the right of revival in the name of the executor, the court said:

"The right to contest a will is given to the next of kin, because they would be entitled to the property of the deceased if the attempted testamentary disposition of it should not be established. If the probate in this case had been revoked in the lifetime of Mrs. Hewins, she, being the only next of kin of the deceased, would have been entitled to the property. If revoked after her death, the property would belong to her personal representatives. * * * Her executors are therefore the proper parties to succeed her in the proceeding pending before the surrogate. The right survives to, and may be prosecuted by them, by analogy to the rule relative to actions."

Our conclusion is that the administrator of the estate of Stephen Bailey was a proper party to the proceeding.

2. It is urged that the will of 1905 was shown by the proofs to have been duly and legally executed, and that the trial court was in error in refusing to so advise the jury. The point raised on the execution of the will was that the subscribing witnesses did not sign the will in the presence of the testatrix. The record, we think, affords some basis for such an inference. The testimony of the subscribing witnesses was at variance on this phase of the case, and an issue of fact was thereby raised which the trial court very properly submitted to the jury.

3. Counsel insist that:

"There was no evidence· of undue influence exercised upon testatrix in the making of the first codicil of November 18, 1909, and no presumption of undue influence could arise with respect thereto."

As to whether the testimony was such as to raise the presumption of undue influence, we cannot agree

with counsel. The rule of law which brings spiritual advisers within the zone of the confidential relation is stated by Mr. Justice COOLEY, in his work on Torts (1st Ed.), p. 530, as follows:

"The law takes notice of the influence likely to be acquired by the physician over his patient, and scrutinizes with jealousy their dealings while the relation continues. As the control of spiritual advisers is likely to be even greater and more controlling especially in the last illness, the reasons for such jealousy are powerful in proportion, and they should be able to show that any advantage obtained for themselves or their church or denomination was the result of free and voluntary action and not obtained by practicing in any manner upon the fears or the hopes, or by taking advantage of spiritual or bodily weakness."

The testimony shows that Miss Bailey was well advanced in years, was in poor health, and was a devotee of the Episcopal Church; that the Rev. William Sayres was her spiritual adviser; that he was sent for by her and consulted as to this codicil; and that he not only advised with reference to it, but prepared the codicil for her. This was sufficient proof of the confidential relation to raise the presumption of undue influence, and after it arose it was a presumption which stood as an item of proof in the case to support the contestant's allegation of undue influence.

But it is argued in substance, in this connection, that the Rev. Sayres had no voice in making the will of 1905, and that the codicils added so little to what had already been given that it would not call for the application of that rule. The first codicil clearly enlarged the use which might be made of the property from a restricted one to a general one. The second codicil limited her bounty to her brother to a nominal sum, after she was aware that he had lost his property and was being cared for and supported by his

daughter. The fact that the advantage gained by the codicil was small would not prevent the application of the rule (*Adams' Estate,* 220 Pa. 531 [69 Atl. 989, 123 Am. St. Rep. 721]), but would render the presumption less difficult to overcome.

4. A further complaint is that the trial court cast upon the proponent the burden of establishing that the testatrix was free from undue influence when she executed the codicils. The portion of the charge referred to follows:

"You will then consider the codicils, and, as to those, I direct you that Miss Bailey was mentally competent to make them, and that they are properly executed; but, to make them valid as parts of her will, the burden is upon the proponent to satisfy you that at the times when they were executed Miss Bailey was free from undue influence, and in making them was carrying out her own wishes and desires. If this fact is established by a preponderance of the evidence, the three documents must be allowed as her will."

We think this part of the charge should be read and considered in connection with other instructions which were given upon that subject. They were:

"The burden is upon the contestant to establish by a fair preponderance of the evidence that the will, or codicil, was procured by undue influence if that claim is made; but where, as in this case, the party charged with undue influence is shown to have occupied the position of a spiritual adviser of the deceased, and to have taken some part by advice, persuasion, or suggestion, in the making of a codicil, which devises a substantial amount of property to the church of which he is a minister, by a republication of the will of August 10, 1905, you will consider that the presumption arises that undue influence was exercised. That presumption, however, is not controlling, but merely shifts the burden of proof as it is called. It really does not do that, but when that presumption arises it then becomes incumbent upon the proponent of the will to so explain the situation or to produce

sufficient testimony to satisfy the jury by a fair preponderance of the evidence that, as a matter of fact, there was not any undue influence, but that the will as made was a fair and free act of the testator."

The trial court instructed the jury, in substance, that the burden of proof was upon the proponent to establish the execution of the will and codicils, and that the testatrix was of sound mind. He also instructed them that the burden of proof was upon the defendant to establish the claim of undue influence. He instructed them quite fully as to the presumption of undue influence which arose by reason of the confidential relations, and that the burden was upon the proponent, as to this presumption, to satisfy them that at the time the codicils were executed Miss Bailey was free from undue influence. We think this is in accord with the holdings of this court. In the case of *Bush* v. *Delano,* 113 Mich. 321 (71 N. W. 628), where the same question was involved, the charge of the court which follows was approved by this court:

"You are instructed that while the evidence that the will in question was drawn by Luther R. Delano, who was named as a legatee therein, does not of itself invalidate the will, it calls for satisfactory explanation, and imposes upon those who present the will for probate the burden of showing to your satisfaction that it was in all respects fair and honest, and expressed the wish and desire of William R. Delano."

For similar holdings, see *In re Bromley's Estate,* 113 Mich. 53 (71 N. W. 523); *Dudley* v. *Gates,* 124 Mich. 440 (83 N. W. 97, 86 N. W. 959); *McPherson* v. *Byrne,* 155 Mich. 338 (118 N. W. 985). The trial court nowhere charged the jury that the burden of proof of establishing undue influence was upon the proponent. In fact, he charged them directly the opposite of that; but, upon the question of the presumption which arose, he endeavored to make it clear to the jury that the burden of the evidence as

to that presumption was upon the proponent, and I
am of the opinion he succeeded in so doing. The case
of *Cooper* v. *Harlow*, 163 Mich. 210 (128 N. W. 259),
is cited by counsel in support of his contention. This
case in no way attempts to change the rule of law laid
down in the foregoing cases.

5. Error is assigned because the trial court ad-
mitted evidence of the financial condition and circum-
stances of Edith Knowles, a daughter of contestant.
The contestant, in attempting to show the physical
and financial condition of Stephen Bailey, showed by
Edith Knowles that she cared for her father the last
14 years of his life, and that she wrote to testatrix
that she was working to care for him. The question
was then asked her:

"*Q.* What work were you doing?
"*A.* I was taking in washing every day.
"*Q.* At that time what was your husband doing?
"*Mr. Paddock:* I object to that, and move that the
last answer be stricken out. It is a roundabout way
to get some matters that are inadmissible in this case.
"*The Court:* It is. Exception.
"*Mr. Erskine:* We would like to know whether
the ruling covers anything she wrote her aunt in re-
gard to her care, and the financial condition of
Stephen Bailey.
"*The Court:* It is simply an indirect way of put-
ting in the same evidence that would be inadmissible
if put in direct, anything in reference to his financial
condition."

Later, in an attempt by counsel to find out the ex-
tent of the ruling, the following took place:

"*The Court:* The point of the testimony was that
she was obliged to take in washings to support the
father. You are really showing the financial condi-
tion of the Knowles. She had no claim upon the
bounty of the testator.
"*Mr. Erskine:* Wouldn't it be competent to show
that Stephen Bailey had to be supported by the
daughter?

"*The Court:* I don't think so; you can show his financial condition possibly, but to show that he had to be supported by his daughter, or that she took in washing to support him, is going a long way further than you have a right to go."

While it is competent in such a case to show the physical and financial condition of the next of kin (*Beaubien* v. *Cicotte*, 12 Mich. 497), it was not competent to show the financial condition of Edith Knowles, because she was not in that class. *In re Merriman's Appeal*, 108 Mich. 454 (66 N. W. 372). The objection to the testimony was well taken by proponent's counsel, and the trial court agreed with him, and during the colloquy which followed the court stated in the presence of the jury that the testimony was incompetent, and gave the reasons why, and further advised counsel that he had already gone further than he was entitled to in showing the financial condition of Stephen Bailey. To now insist that proponent's case was injuriously affected by this rejected testimony to the extent of being reversible error, notwithstanding the action of the trial court, is to ascribe to the jury a lack of intelligence to which I am unable to subscribe. For the trial court to rule against counsel, and then comment as he did on this occasion, would ordinarily injure his case with the jury more than the objectionable testimony would aid it.

6. Some further complaint is made of the use contestant's counsel made of this testimony to the jury. The record does not show the language of counsel upon which this is based. It is claimed by contestant's counsel that what was said was in answer to the argument of proponent's counsel to the jury. We think the record is too meager on this question to admit of consideration.

7. The trial court denied a motion for a new trial. One of the reasons urged therein was that the ver-

dict was against the weight of the evidence. While the testimony upon some of the questions of fact submitted to the jury was somewhat meager, we think it was the duty of the trial court to submit them, and we are not persuaded that the verdict should be set aside as being against the decided weight of the testimony.

The judgment of the trial court should be affirmed, with costs of this court to contestant.

KUHN and MOORE, JJ., concurred with BIRD, J.

STONE, J. I am unable to agree with the opinion of Justice BIRD in this case. The will sought to be probated by the proponent bears date August 10, 1905. The provision of the will which is here material reads as follows:

"All the rest, residue and remainder of my estate, real, personal and mixed, whatsoever, and wheresoever, I will and direct that the same and I hereby give, devise and bequeath it unto Thomas Frederick Davies, Bishop of the Protestant Episcopal Church in the diocese of Michigan, or to his successor in the same office of bishop, to be, however, by him held in trust for the use of the Protestant Episcopal Church in the village of Romeo, organized previously to, or after my death, and I hereby authorize the said Bishop Davies, or his successor in the office of bishop, to sell my real estate in the township of Washington, with the exception of my residence and twelve acres of land, more or less, at any time which may seem desirable. But property owned by me in the township of Bruce must not be sold under three years after my death. The bishop to make and give all necessary deeds, as required by law. My residence and twelve acres of land, more or less, reaching on Main street from the lot owned by Stephen Bailey on the north to the limit on the south shall not be sold, but shall be retained as a home for the clergyman in charge of the parish. Futhermore, if the house is not desired to be used as a rectory, then and in that case I hereby give, devise and bequeath the same with twelve acres of land, more or less, as before de-

scribed, to the diocese of Michigan, to be kept as a resort for clergymen and their families who may desire a quiet summer resting place. No more land need be kept with the house than is considered desirable."

There is no question of the mental capacity of the testatrix, in the execution of the will or the codicils. That question was distinctly taken from the jury by the trial court in its charge.

Passing the claim of the contestant that the will was not duly executed, we come to the codicil of November 18, 1909. That codicil is very brief, and reads as follows:

"I, Lydia Bailey, of the village of Romeo, State of Michigan, having made my last will and testament bearing date the tenth day of August in the year 1905, do now make this codicil to be taken as a part of the same: *First*, I hereby ratify and confirm said will in every respect, save so far as any part of it is inconsistent with this codicil. *Second*, I cancel, annul and revoke the following words in said will and testament, viz., 'to be kept as a resort for clergymen and their families who may desire a quiet summer resting place,' said lines being on page one, lines 33, 34, 35 and 36 of said will, and in place of said words I add and insert the following, viz., 'to be used for any religious or charitable purpose that he, the said bishop, or his successor in his discretion shall direct."

No question is raised in the case that this codicil was not properly executed and witnessed. In fact, the trial court charged the jury as follows upon that subject:

"If you find that the deceased was not unduly influenced in the making of this codicil of November 18, 1909, then it was and becomes a part of her will, was a republication and re-execution of the original will, and made valid the original will, even if the same had not been duly executed. Thus, if she freely and fairly executed the codicil of November 18, 1909, republishing in terms, as it did, the original will, that

would have made the original will good irrespective of the question whether or not it was properly executed on August 10, 1905."

As to this codicil, the only question submitted to the jury was whether the testatrix had been unduly influenced in the making of it. The evidence shows that in the summer of 1909 testatrix showed to the Rev. Mr. Sayres, her spiritual adviser, upon one of his visits to Romeo, the provisions of the aforesaid trust contained in the original will. On reading the clause which provided that in case the homestead was not desired to be used as a rectory it should be kept as a summer resort for clergymen and their families, Mr. Sayres advised the change in such provision which appears in the codicil. It appears in evidence that he pointed out to her the limitations she had placed on this secondary use of the homestead, that it could be used only as a summer resort for clergymen and their families, and told her that she could accomplish the same end by placing the homestead, if not wanted for a rectory, at the discretion of the bishop for any charitable or religious purposes. She fell in with this suggestion and asked Mr. Sayres to prepare a codicil along these lines, which he did. No other change was made in the will by the codicil, which expressly republished and ratified the will in all other respects.

It is the claim of proponent, and there was undisputed evidence to sustain the claim, that the testatrix was satisfied with the codicil, and duly executed it in the presence of two witnesses. The nature and character of the change produced by this codicil might well have been called to the attention of the jury. Its reasonableness, naturalness, and the general character of it, while not controlling, were circumstances proper to be considered with other evidence upon the subject of undue influence. *Meier* v. *Butcher*, 197

Mo. 68 (94 S. W. 883, 6 L. R. A. [N. S.] 202, 7 Am. & Eng. Ann. Cas. and note, pages 887-894). See, also, *In re Merriman's Appeal*, 108 Mich. 454, 459, 460 (66 N. W. 372); *Wallace* v. *Harris*, 32 Mich. 380-397; *Rivard* v. *Rivard*, 109 Mich. 98 (66 N. W. 681, 63 Am. St. Rep. 566).

As no request was made to the trial court to charge upon this subject, by proponent, it cannot be urged here as error that the attention of the jury was not called to it.

Upon the trial evidence was received, over the objection and exception of the proponent, as to the financial condition of Edith M. Knowles, a daughter of the original contestant, who had died before the trial at the circuit. Upon the subject of undue influence and the burden of proof, the trial court, having alluded to the subject a number of times, charged the jury as follows:

"To sum up, then, the whole matter as to the original will, you are directed to find that Miss Bailey was mentally competent to make it and was free from undue influence as to its provision.

"Whether or not it was properly executed is a question of fact for you to determine, and upon that proposition the proponent has the burden of satisfying you by a fair preponderance of the evidence that it was properly executed, or it must be disallowed; that is, unless it was re-executed by the codicil of November 18, 1909.

"You will then consider the codicils, and, as to those, I direct you that Miss Bailey was mentally competent to make them, and that they are properly executed; but, to make them valid as parts of her will, the burden is upon the proponent to satisfy you that at the times when they were executed Miss Bailey was free from undue influence, and in making them was carrying out her own wishes and desires. If this fact is established by a preponderance of the evidence, the three documents must be allowed as her will."

The trial having resulted in a verdict for the contestant, the proponent has brought the case here for review.

Error is assigned upon the ruling of the court in receiving evidence relating to the financial condition of Edith M. Knowles; and the portion of the charge contained in the last paragraph of the last quotation therefrom, beginning with the words "you will then consider the codicils," etc.

1. That it was error to receive the evidence relating to the financial condition of Edith M. Knowles, we need only refer to the following cases: *In re Merriman's Appeal, supra; In re McMaster's Estate,* 163 Mich. 210-224 (128 N. W. 259). The use that was made ·of this evidence by counsel for contestant in their argument to the jury, in view of the issue as to undue influence, rendered this error prejudicial.

2. We think the rule is well established in this State that the burden of proof is upon the contestant to prove undue influence, and not upon the proponent, or beneficiaries, to prove the absence of undue influence. *In re Shepard's Estate,* 161 Mich. 441-463 (126 N. W. 640); *In re Loree's Estate,* 158 Mich. 372 (122 N. W. 623), and cases cited.

The language of the charge above quoted does not state the correct rule, and is inconsistent with the other part of the charge quoted by Justice BIRD. When conflicting charges are given, one of which is erroneous, it is to be presumed that the jury may have followed that which was erroneous. *Grand Rapids, etc., R. Co.* v. *Monroe,* 47 Mich. 152, 154 (10 N. W. 179); *Madill* v. *Currie,* 168 Mich. 546, 560 (134 N. W. 1004).

The language quoted by Justice BIRD from Cooley on Torts was taken from that part of the work treating of "Wrongs in Confidential Relations," and the learned author was not there treating the subject

of burden of proof, where undue influence was claimed, in the probate of a will. In support of Justice BIRD'S holding, he cites the following cases: *Bush* v. *Delano,* 113 Mich. 321 (71 N. W. 628) ; *In re Bromley's Estate,* 113 Mich. 53 (71 N. W. 523) ; *Dudley* v. *Gates,* 124 Mich. 440-449 (83 N. W. 97, 86 N. W. 959) ; *McPherson* v. *Byrne,* 155 Mich. 338 (118 N. W. 985) ; *In re McMaster's Estate, supra; Conklin* v. *Conklin,* 165 Mich. 571 (131 N. W. 154). We are of opinion that the above-cited authorities do not support the claim that the burden of proof upon the subject of undue influence of the testator is shifted from the contestant to the proponent in any case.

*In re Bromley's Estate, supra,* the sole question raised on the trial was whether the will was procured by undue influence. The charge of the circuit judge, which was approved by this court, was as follows:

"Where a person devises his property to one who is acting at the time as his attorney, either in relation to the subject-matter of the making of the will, or generally, during that time, such devise is always carefully examined, and of itself raises a presumption of undue influence. But this is by no means a conclusive presumption, but it is one that may be overcome by evidence; and it is not necessary that that evidence shall in all cases be a positive denial of parties who are personally acquainted with the facts, but it must be such evidence as will lead the jury to believe that no undue influence was exerted. And if such evidence be found from the facts and circumstances surrounding the making of this will as will lead you to believe that the will was made by the testatrix of her own free will, uninfluenced by any other person, then the fact that Joseph W. Donovan was her attorney would not in any way invalidate the will. That should simply be taken into consideration, with all the other facts, to determine whether or not the will was, as a matter of fact, the will of the testatrix."

Of that charge Justice MONTGOMERY, speaking for this court, said:

"Furthermore, we think the charge, as a whole, correctly intimated to the jury that the burden does rest upon the proponent to overcome the presumption that arises from the confidential relation."

This is very far from holding that the burden of proof rests upon a proponent to show that at the time of executing a will the testator was free from undue influence. It is true that a presumption is raised that calls for an explanation, but the burden of proof to show undue influence is not thereby shifted.

In *Dudley* v. *Gates, supra,* after calling attention to the charge of the trial court, MONTGOMERY, C. J., said:

"We do not think that this charge, taken as a whole, could have misled the jury. They were correctly told that the circumstance that the will was drawn by proponent's husband was a circumstance which raised a suspicion, and they could not have heard this charge without understanding that it was the duty of the proponent to remove this suspicion by evidence."

In *McPherson* v. *Byrne, supra,* the administrator of the estate sued defendant in trover to recover the value of certain certificates of deposit which had been issued to the deceased, and had been by her delivered to the defendant prior to her death. The defendant was a priest of the church of which deceased was a communicant. The defendant claimed the property as a gift *causa mortis.* It was held by this court that the circuit judge correctly charged the jury that, where a gift is claimed to have been made to the spiritual adviser of the person *in extremis,* the burden of proof to show the good faith of the transaction rested upon the donee.

In *Re McMaster's Estate, supra* (cited by Justice BIRD as *Cooper* v. *Harlow*), this court reversed a case

where the contestant had prevailed, and where the trial court had instructed the jury that, while in ordinary cases the contestants were bound to prove undue influence, if undue influence was asserted, with reference to the burden of proof, and in that case the court charged as follows:

"Whether this rule is reversed or not in such a case as this, the connection of Mr. Cooper with the making of this will, and its execution, and the facts of his being a large beneficiary, and is named as executor, as well, also, as the relations he entered upon toward Mrs. McMaster at the time the will was executed and such as he sustained toward her at that time to the extent that these things are undisputed in this case, make up such a situation as calls upon Mr. Cooper for satisfactory explanation, and he should show to your satisfaction that it was in all respects fair and honest. The burden of doing this is upon him, and, if he has failed to satisfy you by his explanation that it was fair and honest, you should find against the will without reference to any other question in this case, or any other instruction given you, and in fact need proceed no further with your deliberations. If you do not so find, then you should consider other elements of the case."

After quoting further from the language of the charge, and referring to the decisions of this court, which we have cited, Justice OSTRANDER, in speaking for this court, said:

"The trouble with the instruction is that it does not also advise the jury, as it should have done, that if, in view of all circumstances disclosed, giving effect to the presumption referred to, they are not convinced that the provisions of the will favorable to Mr. Cooper were the result of fraudulent contrivance or of undue influence, then, if the testatrix was competent to make the will, it ought to be allowed. The jury must have understood that in this case the contestants were relieved of a burden which in the ordinary case they would be obliged to carry. The attention of the court was directly drawn to the rule,

so that lack of a fuller statement of the law was not the fault of counsel. As for this error the cause must go down for a new trial, it is proper to say, further, that the presumption recognized in the decisions and in this opinion arising from the preparation of a will by a beneficiary whose relations with the testator are confidential or fiduciary in character is a presumption of fact, the force and effect of it is for the jury, and depends in every case upon the circumstances of the case."

In *Conklin* v. *Conklin, supra,* the relation of a confidential agent and physician having the custody of a will and being himself a legatee having been shown, this court held that the presumption of undue influence called for an explanation. Justice BLAIR, speaking for this court, said:

"The relations of defendant Conklin to testatrix raised a presumption of influence which would call for explanation on his part"—citing the foregoing cases.

The above cases were reviewed, and we think the proper rule is again enunciated in the case of *In re Hartlerode's Estate,* 183 Mich. 51 (148 N. W. 774). In that case, where certain fiduciary relations had been shown to exist between the testatrix and the rector of a church which received a legacy, the trial court directed a verdict and judgment for the proponent. The judgment was reversed here upon the ground that the matter should have been submitted to the jury with proper instructions, and that the testimony was sufficient to call upon the proponent to explain the transaction.

In all of these cases the general rule was recognized that the burden of proof to show undue influence rested upon the contestant, and not the proponent. Such, we think, is the settled law in this State.

For the errors in receiving the above testimony, and in the charge of the court above indicated, the judgment of the circuit court is reversed, and a new trial ordered, with costs of this court to proponent.

BROOKE, C. J., and McALVAY, OSTRANDER, and STEERE, JJ., concurred with STONE, J.