FRYE v. GILOMEN.

1. NEGLIGENCE—SUBSEQUENT NEGLIGENCE.
    Plaintiff's negligence must have come to rest leaving him in a place of danger about which defendant knew or should have known in order for the doctrine of subsequent negligence to be applied.

2. TRIAL—ERRONEOUS INSTRUCTION—PRESUMPTION.
    A jury is presumed to have followed an erroneous instruction.

3. AUTOMOBILES — PEDESTRIANS — INSTRUCTIONS — SUBSEQUENT NEGLIGENCE.
    Instruction that permitted jury to find that westbound pedestrian's negligence had ceased when he was hit by defendants' southbound taxicab near center of street some 60 or 80 feet south of a crosswalk at 2:30 in the morning *held*, reversible error, where plaintiff's negligence, if any, continued until the time of impact, the doctrine of subsequent negligence being inapplicable.

Appeal from Wayne; Sweet (Lucien F.), J., presiding. Submitted June 9, 1960. (Docket No. 33, Calendar No. 48,414.) Decided September 15, 1960.

Case by Ernest Edward Frye against Otto Gilomen and Joseph Santo Cardella for personal injuries

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur, Negligence § 220.
    Doctrine of last clear chance. 92 ALR 47; 119 ALR 1041; 171 ALR 365.
[2] 53 Am Jur, Trial § 554.
[3] 5A Am Jur, Automobiles and Highway Traffic §§ 762, 1099.
    Duty and liability to person struck by automobile while crossing street at unusual place. 14 ALR 1176; 67 ALR 313.
    Duty of pedestrian crossing street or highway as regards looking for automobiles. 79 ALR 1073.

sustained when struck by a taxicab. Verdict and judgment for plaintiff. Defendants appeal. Reversed and remanded.

*Gvazda & Shere* (*Norman W. Stern,* of counsel), for plaintiff.

*Vandeveer, Haggerty, Doelle, Garzia, Tonkin & Kerr,* for defendants.

KAVANAGH, J. Plaintiff, a pedestrian, instituted a negligence action against defendants Otto Gilomen and Joseph Santo Cardella, the owner and the driver, respectively, of a taxicab. It was the claim of plaintiff that about 2:30 in the morning of June 20, 1957, while in the act of crossing from the easterly to the westerly side of Cass avenue in the city of Detroit, he was struck by a taxicab which was being negligently driven by defendant Cardella in a southerly direction on Cass avenue. Plaintiff alleged he was crossing the street with the green light, he was not guilty of any negligence, and the accident was due solely to defendant Cardella's negligence. Plaintiff took the further position that he would rely on the doctrine of subsequent or after-discovered negligence.

Defendants claimed the cab had the green light; the plaintiff was crossing against the red light some distance from the southerly crosswalk; that plaintiff reached the center of the street and stepped into the south-bound lane directly into the path of the cab; and that the driver was unable to do anything to prevent the accident.

The circumstances surrounding the accident were highly controverted. The following facts seem clear: Some time between 2 and 2:30 in the early morning of June 20, 1957, plaintiff left a bar on Woodward avenue near Temple in the city of

Detroit, proceeded along Temple avenue, arriving at the southeasterly corner of Temple and Cass avenues. At this point Temple is a 1-way street of westbound traffic and Cass is a 2-way street running in a north-south direction. The intersection is controlled by 6 traffic signals, one at each corner and 2 overhead. The weather was clear, the pavement dry, and the area reasonably well lighted. Disputed testimony was offered as to the traffic signals at the time plaintiff arrived at the intersection and started to cross Cass avenue. Plaintiff claimed the light was green for him to proceed. A witness for defendants testified plaintiff began to cross on a red light. Other testimony somewhat impeached the latter witness. Plaintiff claimed while he was crossing the intersection, and when he had reached a point approximately 3/4 of the way across Cass avenue, the light changed to amber. He further contended he was struck immediately thereafter by the taxicab. Plaintiff also claimed he had no notice of the cab until it was a few feet away from him, and at that point he could do nothing to avoid the accident.

Defendants produced evidence tending to show the cab was proceeding at a legal speed and was crossing Temple with a green light. Defendant driver, by deposition, testified he didn't notice plaintiff until only a few feet away from him, at which point plaintiff was a few feet from the center of the street and 60 or 80 feet south of the crosswalk. Police officers who investigated the accident testified plaintiff was lying off the highway in a section between drives of a gasoline station and about 45 or 50 feet south of the intersection. Other testimony introduced by defendants tended to show plaintiff had not crossed at the intersection; that plaintiff was walking in an unsteady manner; and that he was not observing the surrounding conditions.

At the conclusion of the testimony, the court proceeded to charge the jury. After instructing them on the various theories of the parties, the court further instructed the jury that plaintiff would be entitled to a verdict if he satisfied them by a preponderance of the evidence, first, that his injuries were due solely to defendant Cardella's negligence, or, second, that such injuries were due to defendant's subsequent negligence, which would render remote any contributory negligence on plaintiff's part and make the subsequent or intervening negligence of defendant Cardella the sole proximate cause of the accident.

The jury returned a verdict in favor of plaintiff in the sum of $6,000. Defendants' motions for judgment *non obstante veredicto* and for a new trial were denied. The trial court in denying the motions filed a written opinion in which he admitted error in instructing the jury on the doctrine of subsequent negligence. The trial court said:

"It cannot be said that there was anything before the jury in the way of testimony or evidence that would permit them to find as a fact that the plaintiff's negligence ceased to operate at any time before the instant of collision. Only by pure speculation could a reasonable person determine or decide that at some point in the course of plaintiff's travel from the curb to the point of contact he became careful and ceased to be negligent."

The trial court then determined that he had made an error in submitting the case to the jury on the plaintiff's theory of subsequent negligence. He proceeded to hold, however, that it was harmless error, although regrettable, and that such error did not result in a miscarriage of justice and did not affect the verdict of the jury.

Defendants appeal, raising 3 questions as follows:

"1. Was the error committed by the trial court in instructing the jury as to the theory of subsequent negligence harmless, 'albeit regrettable'?

"The trial court answered, 'Yes.'

"Appellants contend the answer should be, 'No.'

"2. Did the plaintiff prove that defendants were guilty of any act of negligence which was a proximate cause of the injuries he sustained?

"The trial court answered, 'Yes.'

"Appellants contend the answer should be, 'No.'

"3. Did the trial court err in denying defendant's motion for judgment *non obstante veredicto?*

"The trial court answered, 'No.'

"Appellants contend the answer should be, 'Yes.'"

An examination of the entire record discloses that the trial court was correct in holding that he was in error in submitting to the jury plaintiff's theory of subsequent negligence. Plaintiff's negligence, if any, continued until the time of impact. In order for the doctrine of subsequent negligence to be applied, plaintiff's negligence must have come to rest leaving him in a place of danger about which defendant driver knew or should have known. *Churukian* v. *LaGest,* 357 Mich 173; *Szost* v. *Dykman,* 252 Mich 151; *Morrison* v. *Hall,* 314 Mich 522.

Although the trial court correctly stated his charge as to subsequent negligence should not have been given, the court nonetheless concluded that such error was harmless, albeit regrettable, did not result in a miscarriage of justice, and did not affect the verdict of the jury. In *Rathbone* v. *Detroit United Railway,* 187 Mich 586, where different instructions were given to the jury, some proper and some improper, this Court said (p 599):

"We have frequently held that, where variant instructions are given to the jury, some of which are

proper, and some of which are improper, it must be presumed that the jury followed the erroneous instruction. That the instruction of which complaint is made is erroneous is clear."

In *In re Bailey's Estate,* 186 Mich 677, Justice STONE said (p 690) :

"When conflicting charges are given, one of which is erroneous, it is to be presumed that the jury may have followed that which was erroneous. *Grand Rapids & I. R. Co.* v. *Monroe,* 47 Mich 152, 154; *Madill* v. *Currie,* 168 Mich 546, 560."

Justice SMITH, in *McGuire* v. *Rabaut,* 354 Mich 230, said (p 237) :

"In considering the effect of conflicting instructions, one of which is erroneous, we presume that the jury may have followed that which was erroneous. *In re Bailey's Estate,* 186 Mich 677."

In the instant case we cannot but conclude that the erroneous instruction as to subsequent negligence was reversible error. The trial court erred in denying plaintiff's motion for a new trial.

In view of the fact that a new trial is granted, we will not discuss the other questions raised by defendants on their appeal, which are not likely to arise on a new trial.

The judgment for plaintiff is reversed, and a new trial is granted. Defendants shall have costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and SOURIS, JJ., concurred.